THE STATE v. VICTOR CATRON, Appellant.—296 S. W. 141.

Division Two, July 23, 1927.

1. **DEMURRER TO EVIDENCE.** If defendant fails to stand upon his demurrer to the evidence offered at the close of the State's case, but goes forward offering evidence of his own, the court, in considering the sufficiency of the evidence to support the verdict of guilty, must consider all the evidence.

2. ———: **Rape: Force.** A verdict of guilty having been returned in the trial of a defendant charged with raping a woman eighteen years of age, and defendant having admitted that he abducted her and had sexual intercourse with her in his automobile, the only question for decision, in a consideration of the question whether the evidence made a case submissible to the jury, is whether the evidence establishes beyond a reasonable doubt carnal knowledge by force, against the will and without the consent of the woman.

3. ———: ———: **Resistance: Fear: Constructive Force.** To establish a charge of rape the State must show force on the part of the defendant, and that the woman did not consent, and in showing either, resistance or want of resistance on her part becomes an important element of the evidence. But the amount of resistance necessary is dependent upon the circumstances by which the carnal act is attended, upon the woman's mental and physical strength to make resistance, and upon other facts showing the uselessness of resistance. The doctrine of utmost resistance is not applicable where the woman is put in fear of personal injury. Neither actual physical force on defendant's part, nor physical resistance on the woman's part, is necessary, if the woman yields to the carnal act through fear caused by prior threats of great bodily harm or injury, for such fear is constructive force.

4. ———: ———: **Respective Weight and Age: Fear: Abduction and Threats: Force and Consent.** The fact that the woman was eighteen years of age and weighed 155 pounds, and that the defendant was nineteen years

of age and weighed 119 pounds, is of no importance where the woman was taken from her escort in the nighttime, at the point of a pistol, by defendant and his larger co-indictee, and by the same coercion was driven away in an automobile to an isolated place and there both had sexual intercourse with her, she yielding to them only after they had pointed a gun at her with the threat that she would never get home unless she did, and only after one of them had torn her bloomers while the other stood by with gun in hand, and she was all the time crying and sobbing. Such facts show rape by force, against her will and without her consent.

5. ————: ————: **Persuasion: Consent: Fear.** Notwithstanding the woman testified. that she was "persuaded to give in" and have sexual intercourse with the two men, evidence that the two met her and her escort at a late hour of the night, with pistols in hand compelled her escort to leave under a threat of death, forced her into their automobile, drove to an isolated place, threatened her that is she did not give in to them she would never get home, pointed a pistol at her, and while one of them stood by with a gun in hand the other tore her bloomers and had intercourse with her, and then the other while she remained in the position on the back seat also had intercourse with her, she crying and sobbing all the time and weak with fear and stupefaction, sh/ws that the word "persuaded" was not used by her in the sense of consent, but that she yielded to them only out of fear of great bodily harm.

6. **RAPE: Unchaste Woman: Imprudence.** Forcible ravishment of an unchaste woman is rape. Want of chastity may have a bearing on the question of consent, but may not be shown as a defense or in mitigation. The fact that the prosecutrix was a young married woman, separated from her husband and suing for a divorce, was returning from a dance with a young man as escort at two-thirty_o'clock at night, may be evidence of imprudence, but it does not show that she was unchaste or a loose woman.

7. ————: **Manner of Performance: Outcry.** No inference of a conclusive nature can be drawn from the failure of the prosecutrix to make a great outcry after the act of sexual intercourse induced by threats of great bodily harm with a gun in hand, nor from the fact that at the time of the act she was sitting on the front edge of the back seat of the automobile, which was about a foot from the floor, the upper portion of her body reclining towards the back of the seat, one of her hands grasping the seat and the other against defendant's shoulder, pushing him away. Such facts only relate to the question of consent, and their probative force is for the jury to determine. Besides, a great outcry would have been futile where the two men with guns in hand at a late hour of the night forced her into an automobile, drove to an isolated place on a lonely road and there accomplished their purpose by threats of great bodily harm, and when they let her out of the automobile she observed its license number and immediately reported the assault to a constable, which was a circumstance tending to show non-consent.

8. ————: **Passion and Prejudice of Jury: Weight of Evidence.** There being substantial evidence of defendant's guilt, its preponderance is a question for the jury; and a light punishment of five years' imprisonment for a defendant found guilty of forcible rape by means of abduction and threats of great·bodily harm automatically disposes of an assignment that the verdict was the result of bias, prejudice and passion on the part of the jury.

Corpus Juris-Cyc. References: **Criminal Law,** 17 C. J., Section 3549, p. 205, n. 25; Section 3593, n. 256, n. 67. **Rape,** 33 Cyc., p. 1420, n. 34; p. 1423, n. 53; p. 1427, n. 89, 95; p. 1478, n. 72; p. 1485, n. 11; p. 1490, n. 43; p. 1501, n. 11.

Appeal from Circuit Court of St. Louis County.—*Hon. G. A. Wurdeman,* Judge.

AFFIRMED.

*George F. Heege* and *J. C. Hoester, Jr.* for appellant.

(1)   The court erred in overruling defendant's instruction in the nature of a demurrer to the evidence at the close of the State's case.   (a)   To establish the crime of rape there must be: First, an assault and sexual intercourse, that is, a penetration of the female organs by the male organ; second, this penetration must be by force and against the will of the female; and, third, it must be without any consent whatever upon the part of the female and the utmost reluctance must be manifested and the greatest resistance offered by the female to the acts of the male.   State v. Miller, 191 Mo. 587, 600.   (b)   There was no substantial evidence offered at the trial which warranted the jury in convicting defendant of rape, as charged in the information.   State v. Remley, 237 S. W. 489; State v. Burgdorf, 53 Mo. 65; Champagne v. Hamey, 189 Mo. 726; State v. Goodale, 210 Mo. 290; State v. Tevis, 234 Mo. 284; State v. Donnington, 246 Mo. 356; State v. Paris, 259 Mo. 437; State v. McChesney, 185 S. W. 199; State v. Hollis, 284 Mo. 627; State v. Anderson, 284 Mo. 657; State v. Eslick, 216 S. W. 974; Burkett v. Gerth, 253 S. W. 199.   (2)   The court erred in overruling defendant's instruction in the nature of a demurrer to the evidence at the close of the whole case.   Cases cited above.   (3)   The verdict was the result of bias, prejudice and passion on the part of the jurors, and is contrary to the weight of the evidence.   (4)   The court erred in refusing to grant a new trial to the defendant on account of improper argument and misconduct on the part of the prosecuting attorney in arguing the case to the jury.   In this case in the argument to the jury the prosecuting attorney stated:   "These men had murder in their hearts."   This statement was made over defendant's objection, which was overruled by the court, to which ruling the defendant, by his counsel, duly excepted.   State v. King, 174 Mo. 647; State v. Upton, 130 Mo. App. 316.

*North T. Gentry,* Attorney-General, and *J. D. Purteet,* Special Assistant Attorney-General, for respondent.

(1)   The trial court properly overruled defendant's demurrers to the evidence interposed at the close of the State's case and at the close of all the evidence in the case.   The evidence is substantially sufficient to show all the elements of the crime, to-wit, carnal knowledge, force and absence of consent.   (a)   Constructive force meets

the requirements of the statute. Kelley's Crim. Law (3 Ed.) sec. 538, p. 472. (b) Consent obtained or induced by fear of personal violence is not consent. 1 Wharton Crim. Law (9 Ed.) sec. 557; 2 Bishop Crim. Law (7 Ed.) sec. 1125; State v. Cunningham, 100 Mo. 392; State v. Dusenberry, 112 Mo. 296; State v. Barbour, 234 Mo. 536. (c) Where the record contains substantial evidence of guilt of the crime as charged in the information, this court will not disturb the affirmative finding of the jury. State v. Ripey, 229 Mo. 666; State v. Espenschied, 212 Mo. 223; State v. Mann, 217 S. W. 69. (2) The argument of the prosecuting attorney to the jury contains no prejudicial remarks. Arguments to the jury are largely within the sound discretion of the trial judge. State v. Williams, 274 S. W. 436; State v. Tracy, 294 Mo. 390.

DAVIS, C.—Tried to a jury on June 10, 1926, on the charge of raping Clara Pleimling on April 25, 1925, defendant was convicted and sentenced to a term of five years in the State penitentiary, from which an appeal was duly taken.

The evidence adduced on the part of the State warrants the following finding. Clara Pleimling, employed in the city of St. Louis, a young married woman, eighteen years of age, then separated from her husband, with an action for divorce pending, which was later granted, was escorted by one Krueger, a young single man, to a dance at Fenton, in St. Louis County. The conveyance used was an Overland coupe. Other couples accompanied them in machines or met them there. Returning home, on reaching Seibert Avenue and Morganford Road in St. Louis County, the couples stopped a few minutes for a word of farewell. The other couples then moved on, leaving Krueger and Miss Pleimling chatting. On the departure of the couples, Krueger lit and smoked a cigarette. After a lapse of ten to fifteen minutes, while the couple were seated in the coupe talking, defendant and one James H. Chance, jointly informed against with defendant, but as to whom a severance was granted, drove up in a Star coach, stopping immediately behind Krueger's coupe. The Star coach had two doors, with individual seats in front, it being necessary to raise and tip one of the seats forward to permit access to the rear seat. After stopping and ascertaining that the occupants of the coupe were a man and a woman, by prearrangement Chance ordered Krueger from the coupe at the point of a pistol, and defendant bade the woman alight and, taking her by the arm, ordered and pushed her towards and into the back seat of the coach. Krueger then protested, attempting to protect the girl, but was met with the threat, "Get going G— D— you, or I will blow your head off," upon which Krueger drove on. Chance then took the wheel and defendant occupied the rear seat next to the girl. Chance drove

the car along Seibert Avenue until defendant decided to drive. After driving on, defendant stopped the coach on Seibert Avenue, in St. Louis County. They attempted to humor the girl, and Chance, who was beside her, demanded that she give in to them, saying, "You will never get home if you do not." At this time defendant asked Chance for the "gat," and Chance handed something to defendant, which she was unable to identify as a gun. During the occurrence Clara was crying and she stated she was very weak. Chance in trying to humor her told her it was no use to cry, but if she would give in to them she would be taken home. After stopping they pointed a gun at her once, but she could not remember whether or not it was often. Chance tore her bloomers and had sexual intercourse with her, defendant in the meantime standing near the car with a gun. After Chance had accomplished his purpose, defendant boarded the coach and had sexual intercourse with her in the same manner. They then drove her to Risch's Grove, four or five blocks from her home, put her out, and drove away. The evidence shows that the culprits first accosted Krueger and Clara about two-thirty A. M., on the roadside, and that they delivered her at Risch's Grove about five-thirty A. M. In the interim, Krueger reported the kidnapping to Constable Knight, and upon Clara's alighting from defendant's car at Risch's Grove, she immediately hied to the home of Constable Knight, reporting the assault and rape on her to him. She found Krueger waiting for her there. Defendant was arrested at six-thirty A. M. the same morning at his home.

Inasmuch as the evidence on both the part of the State and defendant shows that neither Clara and Krueger on the one hand nor defendant and Chance on the other had ever known or heard of each other previously, it may satisfy the curious with regard to the promptness of the arrest to state that the preliminary examination shows that Clara unobserved placed herself on alighting in a position to read the number of the state license on the coach, which she communicated to the constable.

On cross-examination Clara stated in substance that no houses were observed at the place of assault. The night was dark and damp, resulting in her inability to identify defendant. At the time of the rape she was sitting on the front edge of the seat with the upper portion of her body reclining towards the back of the seat, which was about a foot from the floor. One of her hands was grasping the seat, the other was against his shoulder, pushing him away. The following questions were asked and answers returned.

"Q. Now after this big man had intercourse with you, you say he persuaded you to give in to him? A. Yes, sir.

"Q. Under his persuasion you did give in to him? A. Yes, sir."

Chance, testifying for the State, corroborated the prosecutrix as to the assault in the first instance with the pistol, as to the kidnapping of the prosecutrix, as to no previous acquaintance with her, and as to the sexual intercourse both he and defendant had with her. His further testimony was to the effect that she not only made no outcry, but that she consented to the intercourse provided they would take her home. However, he stated she was sobbing during the abduction.

Defendant, on the stand, admitted that he and Chance abducted the prosecutrix, taking her from her escort as related by the State's witnesses, and that he had sexual intercourse with her, but denied that he forced prosecutrix to yield to him, and asserted that it occurred with her consent. Such other facts as are pertinent, if any, will be related in the issues discussed.

I.  It is the contention that the court erred in refusing to sustain instructions in the nature of demurrers to the evidence to acquit defendant.  As the defense refused to stand on the instruction offered at the close of the State's case, but went **Sufficient** forward introducing evidence, we must consider all the **Evidence:** **Force:** evidence in reviewing the question.  The abduction of the **Consent.** prosecuting witness and defendant's sexual intercourse with her may be eliminated from further notice, as both acts were admitted by defendant.

Defendant's position that the cause was not submissible to the jury is based on the predicate that she made no outcry, offered no resistance to the advances of the abductors, and stated on cross-examination that she was persuaded to let them have intercourse with her.  It is then deduced from the rules of law reported in State v. Miller, 191 Mo. 587, 90 S. W. 767, that the State failed to establish beyond a reasonable doubt sexual intercourse by force, against the will of the female and without any consent whatever on her part. The phrases "against the will" and "without the consent" of the female, interpreted as equivalent terms, are defined as the manifestation of the utmost reluctance and the greatest resistance on the woman's part.

In a similar case, State v. Barbour, 234 Mo. 526, 137 S. W. 874, where a like contention was made, the court summed up the essential elements as relating: first, to the necessity of showing non-consent; second, to the necessity of proving that all practicable resistance was made; third, to the evidential force of a failure to make a great outcry; and, fourth, to the inference arising from the manner of performing the sexual act.

The first and second points, non-consent and resistance, are well treated in State v. Barbour, supra, which we adopt as here pertinent,

reading: "It will be seen at once that appellant's first and second points are correlated, that is, non-consent is proven whenever there is proof that the woman made all practicable resistance to the ravisher. This has been well stated by BLACK, J., in State v. Cunningham, 100 Mo. l. c. 391, as follows: 'The State must, of course, show force on the part of the defendant, and that the woman did not consent. The questions of fact are interwoven, and the one is somewhat dependent upon the other. Whether the woman did or did not consent to the act is, in most cases, to be inferred from the surrounding circumstances; and, hence, resistance or want of resistance becomes an important element in the evidence. So, the resistance to be expected depends much upon the physical and mental strength of the woman. The distinctions between the facts to be proved, and the evidence adduced in proof of them, should be kept in mind. The importance of resistance is simply to show two elements in the crime: Carnal knowledge by force by one of the parties, and non-consent thereto by the other. [State v. Shields, 45 Conn. 264.]' "

If the record had shown merely an act of intercourse by force, the utmost resistance would probably have not been established. The record, however, develops further facts and circumstances, such as fear of personal violence, and we have held that the utmost resistance doctrine is not applicable to a state of facts where the female is put in fear of personal injury. [State v. Barbour, supra.] The amount of resistance necessary to annul consent depends on the uselessness of resistance. Neither actual physical force nor physical resistance is necessary, if the woman yields through fear caused by threats of great bodily harm or injury, for such is constructive force, deleting the necessity of the utmost physical reluctance and resistance, and constituting the intercourse rape, provided the threats are made previous to the act.

It is asserted that, because of the age and weight of the girl, eighteen years and 155 pounds respectively, and the age and weight of defendant, nineteen years and 119 pounds respectively, rape was inconceivable. Where relevant facts justify it, this argument would probably have force, but inasmuch as it casts aside the fear of harm engendered by the duress of abduction and threatened injury, it is impertinent to the facts here developed.

The girl and her escort were, on being accosted by defendant and Chance, met with threats of injury such as to subdue her will. The abduction at the point of a pistol, without more, threatened great bodily harm, suggesting to her consciousness the fear of dreadful and dire consequences and overcoming her will. For a girl to be accosted on a road at two-thirty o'clock in the morning, taken from her companion at the point of a pistol and carried away by ruffians she never knew existed, puts her in such fear, we will presume, as to

overcome and continue to overcome her will, so that the subsequent acts of intercourse by them upon her will constitute rape, absent evident facts and circumstances to the contrary. However, this was not the full extent of the threats and duress, for the intimidation continued when Krueger was told by Chance, "Get going, G— D— you or I will blow your head off." Demanding that they be permitted to accomplish their purpose, they again frightened her with the threat, "You will never get home if you do not." At this time a pistol was asked for and handed to defendant. To the frightened and intimidated girl it was an additional threat to have pointed the gun at her after stopping. All of the above facts and circumstances negatived consent as did the tearing of her bloomers; and it is inconceivable that it would have been necessary to tear her bloomers if she had consented. Further corroboration of her lack of consent is shown by the crying and sobbing during the whole occurrence. That she was physically weak from fear and mental strain tended to show reluctance and resistance to her utmost strength.

Defendant maintains, however, that the facts and circumstances show her consent. This is based on her cross-examination to the effect that she was persuaded and under the persuasion she gave in to them; that after the act by Chance she remained in the same position she had theretofore assumed while defendant satisfied his passions. We are unable to agree that by use of the word persuasion she meant consent. The use of the pistol in the abduction, the menace to her escort, the threat that if she did not give in to them she would never get home, the pointing of the pistol at her, the handing of it to defendant just before the act of intercourse by Chance, the crying and sobbing, the weakened condition of the woman and the tearing of her bloomers, supported by the determination to accomplish their purpose whether or not, interpret the word persuasion as used by her on the trial to mean non-resistance to intercourse caused by a well grounded fear of great bodily harm and even death. That these men intended to murder her escort, if it became necessary, and to maltreat and do her great bodily harm, even to the extent of killing her, if thwarted in their brutish purpose, we entertain no doubt. That she remained in the same position after Chance had ravished her was, we infer, due to stupefaction at the enormity of the thing done to her. We may say in passing that defendant is as responsible for the rape committed by Chance on her as he is for his own act of rape.

II. It is suggested that the evidence, that the girl was a young married woman and abroad at two-thirty A. M. with an escort return-

ing from a dance, characterized her a loose character. At that time she was separated from her husband, with a divorce suit pending. She may not have been circumspect in going to the dance with Krueger, but no evidence of moral delinquency appears. Youth is gregarious, loving company and action. We see nothing of looseness about her, only a lack of prudence. Whatever her actions though, it is said that kissing goes by favor, not by right; and it has been held that by force and without her consent one may be guilty of ravishing an unchaste woman. Want of chastity may have bearing on the question of consent, but may not be shown as a defense or in mitigation. [33 Cyc. 1420.]

*Imprudent Woman.*

III. Defendant points to the absence of a great outcry and the inferences to be drawn from the manner of performing the act to absolve him from criminal responsibility. As we said in State v. Barbour, supra: "No inference of a conclusive nature can be drawn from either of these bases. At the most they give rise to a disputable presumption which the jury were entitled to draw or not to draw as they might see fit under the circumstances in evidence. . . . At any rate, such deductions, if admissible, were not compulsory, hence the trial court was clearly right in relegating them to the jury."

*Outcry.*

The evidence shows defendant and Chance isolated the girl on a lonely road in the dark, too deep for her to later recognize them. No one came near and no houses were observed. A great outcry would have been futile. It is said, however, that houses were passed on the way to Risch's Grove where she was let out, but the record contains no evidence that anyone was up or abroad or could have intervened. Moreover, their purpose had been accomplished. We see no opportunity for an effective outcry to this point. Immediately upon alighting, the girl hied herself to the home of the constable, when and where she told her story. The reporting of the matter in this manner at the earliest opportunity was a circumstance in her favor, tending to show non-consent.

The questions of assault, force, will or consent, utmost reluctance and resistance, and sexual intercourse were properly submitted to the jury and the jury were justified on the case made by the State in finding the evidence showed defendant guilty beyond a reasonable doubt. Our conclusions are supported by State v. Cunningham, 100 Mo. 382, 12 S. W. 376; State v. Dusenberry, 112 Mo. 227, 20 S. W. 461; State v. Barbour, 234 Mo. 526, 137 S. W. 874; 1 Wharton on Crim. Law (9 Ed.) sec. 557; 2 Bishop on Crim. Law (7 Ed.) sec. 1125.

IV. It is said that the verdict was the result of bias, prejudice and passion on the part of the jurors and contrary to the weight of

the evidence.   If, by the weight of the evidence, it is meant that
the case was not submissible to the jury for lack of
**Passion** sufficient facts, we have heretofore disposed of the
**and** matter.   If it is meant that the evidence preponderates
**Prejudice.** in favor of defendant, that question was wholly within
the province of the jury and the trial court.   The light sentence of
five years automatically disposes of the question of bias, prejudice and
passion on the part of the jurors.

V.   It is complained that the court erred in failing to reprimand
the prosecuting attorney and in failing to discharge the jury when
the prosecuting attorney in his closing argument compared the prose-
**Argument** cuting witness with the daughter or daughters of mem-
**to Jury.** bers of the jury and stated that the same thing might
happen to their daughters as happened to the prosecut-
ing witness.   This is the only assignment of error, relative to the
argument, in the motion for a new trial that we are permitted to
notice, under the ruling in State v. Standifer, 289 S. W. 856.   The
record, however, fails to divulge that the prosecuting attorney men-
tioned the word "daughter" in his argument.

We think the record discloses that defendant was afforded a fair
and impartial trial.   The judgment is accordingly affirmed.   *Higbee*
and *Henwood, CC.,* dissent.

PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted
as the opinion of the court.   All of the judges concur.