**STATE of Missouri, Respondent,**

v.

**Virgil Major WYNN, Appellant.**

No. 49096.

Supreme Court of Missouri,

Division No. 1.

May 14, 1962.

Motion for Rehearing or to Transfer to Court En Banc Denied June 11, 1962.

Virgil Major Wynn, pro se.

Thomas F. Eagleton, Atty. Gen., Phillip C. Houx, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

HOUSER, Commissioner.

A Jackson County Circuit Court jury found Virgil Major Wynn guilty of rape and fixed his punishment at two years' imprisonment in the penitentiary. Defendant obtained a special order permitting appeal under Supreme Court Rule 28.07, V.A.M.R. The case was submitted here without oral

argument upon briefs filed by the state and by defendant, pro se.

The state introduced evidence from which the jury could have found the following facts: Prosecutrix, a female of the age of 17 years, was registered with Mack's Employment Office in Kansas City. On October 12, 1960 she received a call from the agency directing her to go to 1415 Holmes Street, there to baby-sit for a couple so they could go to work. Cab fare was promised. Prosecutrix took a cab and upon arrival at that address a Negro man (identified by prosecutrix at the trial as the defendant) came out of the building, paid the cab driver and returned. Then prosecutrix and the man entered the building. She followed him up the stairs to the landing on the second floor. On some pretext he took a position behind her. Suddenly and without warning prosecutrix was struck a blow on the top of the back of her head by an object which looked like a broomstick. When prosecutrix "sort of screamed" the man said "If you don't shut up I'll finish killing you." He then told her to take down her pants and undergarments, which she did. He took off one of her shoes and one red sock and told her to "lay down." She refused "so he picked up his stick again," whereupon she said "I'll sit on the step." He told her to sit on the second step from the bottom of the flight of stairs leading from the second floor landing to the third floor. She did so, and he told her to open her legs, which she did. Then he "put his private parts into [her] private parts" for five minutes. When he had finished the intercourse he left the building. Blood from her head ran down onto her blouse, the steps, the landing, and got on her jeans and upon the wall while she was putting her clothes on. After dressing she grabbed her shoe, ran down the steps and out of the building, leaving the one red sock in the building, and ran to a drugstore at 15th and Charlotte, a block or more distant from 1415 Holmes. At the drugstore she "told the lady what happened." The police were called. They

found her in a state of apparent shock, bleeding from the laceration on her head. Her blouse was soaked with blood. She had blood smears on the rest of her clothing. At the drugstore she was unable to explain what happened, because of nerves and shock. By ambulance she was taken to General Hospital where she was examined and treated. She was at the hospital two hours. Prosecutrix testified her head lacerations were treated and that she also was examined "down there" and received treatments "on the lower part" of her body. The interne in the emergency room testified he found only a scalp laceration, an inch long, repaired by taking four sutures, but that he did no other type of examination—no gynecological examination. At the hospital prosecutrix told police officers what happened, whereupon the officers went to 1415 Holmes, a vacant house. They found bloodstains on the landing and stairs leading to the third floor; three or four spots of another substance described in the transcript; "a blood mark that resembled the buttocks of a person who had been sitting on the step there"—a "buttocks imprint." The stains on the floor were fresh but the wood was dry and unvarnished and the blood had seeped into the wood, making it impossible to lift the material for lab inspection because "it soaked into the wood like a blotter". They found one red sock at the bottom of the stairs leading to the third floor. They called the laboratory car, and photographs were taken. A police officer testified that prosecutrix described her assailant as a colored male approximately 20 years of age, five feet eight inches in height, weighing 140 pounds, with bushy hair. At the trial prosecutrix testified that her assailant was about five feet seven inches tall, age about 25 years, a medium-dark Negro with a "high-bridge" nose. She said he had pretty black "real bushy" hair which was long and did not look like it had been combed; that he was wearing an eggshell-colored coat with no hat. The day after the occurrence prosecutrix picked out

of the police book the pictures of two other Negroes, identified "on the basis of their hair," which was long and bushy, but at the trial she testified that these other two men were "not the man." From six photographs, including one of the defendant, shown to her by police eighteen days after the occurrence, prosecutrix definitely identified the photograph of defendant as the man who assaulted her. "Just the minute she saw him in the picture she said 'There's the man, right there.'" At the trial, after having been impressed with the seriousness of the matter, she testified that she was "certain" that the defendant in the courtroom was the man who had raped her. Three photographs of the steps, landing, and walls, taken by the police investigators, were identified by prosecutrix as the place where the assault occurred. They showed stains and spots, which she said was blood from her head, and other spots described by the officers. They showed two prints on the second step, an outline of a person's buttocks and three finger marks in the blood.

 Appellant complains that the evidence was inconsistent; that there was no proof that appellant committed the offense charged, or of any overt act by appellant in connection with the offense, or that placed him at the scene of the crime. Appellant does not specify in what particular the evidence was inconsistent, simply asserting that when "the court inquired what position was she in at the time of the assault she replied that she was sitting on the steps with her legs open." We find no inconsistency in this testimony, and we are not obliged to search the record for other unspecified inconsistencies. The testimony of the cab driver and prosecutrix definitely placed appellant at the scene, and prosecutrix' testimony was substantial evidence that appellant committed this crime.

Appellant complains that the information "does not allege any date of such offense as charged, nor upon whom nor where, and therefore is totally insufficient to sustain the * * * sentence * . * *." The following quotation from the information completely refutes this point: "* * * VIRGIL MAJOR WYNN * * * on the 12th day of October, 1960, at the County of Jackson, State of Missouri, did then and there in and upon one [naming the prosecutrix], unlawfully, violently and feloniously did make an assault, * * *," etc.

Appellant's complaint that there was no evidence of immediate outcry is without substance, for prosecutrix testified that as soon as she put her clothes on she ran directly from the vacant house at 1415 Holmes to the drugstore at 15th and Charlotte, where she "told the lady what happened," and the police were called.

Appellant complains that after having been treated at the hospital for a head laceration she was examined "for the specific purpose of determining whether the offense [charged] had been committed against her" but that the doctor's testimony did not establish that she had been raped. There is no direct evidence that she was examined for the purpose of ascertaining whether she had been sexually assaulted. There was evidence that if any such examination had been made it would have been made by the gynecologist resident, and that there was no record of such an examination. If prosecutrix' testimony that she was examined "down there" on the lower part of her body indicates indirectly that she was examined for this purpose, the failure of the interne to testify as to his gynecological findings would serve to weaken, but not to destroy, the state's case.

Appellant asserts that the cab driver's testimony did not substantiate the description given police by prosecutrix, corroborate the physical description of appellant, or support any other evidence introduced against appellant. The cab driver saw the man at the time he paid the cab fare. At the trial the cab driver testified that while he could not definitely say he knew him, he

knew his description, pointed out defendant in the courtroom as "the fellow" who "fits the description," and testified that defendant looked "very close like the man"—"looks like the man." This constituted substantial corroborating evidence on the issue of identity.

■ Appellant complains there was no evidence that resistance by prosecutrix would have been futile. While there was no evidence of "utmost resistance," that doctrine was not applicable under the rulings in State v. Moore, Mo.Sup., 143 S.W. 2d 288, State v. Catron, 317 Mo. 894, 296 S.W. 141, and State v. Dusenberry, 112 Mo. 277, 20 S.W. 461, because there was evidence of personal violence inflicted upon the female, further violence with a stick threatened, a threat to "finish killing" prosecutrix, and, after refusal on her part to "lay down," her yielding under the influence of this violence and these threats. From this evithe jury could find that resistance would have been futile; that prosecutrix' consent was induced by fear of further personal violence, and that her mind was so overpowered by such fear that she dared not resist.

Finally, appellant says the court erred in denying defendant the right, at the time allocution was granted, to introduce testimony by prosecutrix' best girl friend that prosecutrix was struck on the head by a white man, and not raped; that the rape was a hoax. Defendant asserts this evidence unquestionably would have shown that the judgment and sentence should not have been imposed. Here is the sequence of events:

On April 19, 1961 defendant was convicted by the jury.

On April 28, 1961 defendant filed a motion for new trial, not mentioning any newly discovered evidence.

On June 7, 1961 two named persons made affidavits that prosecutrix stated in their presence and in the presence of others that the individual who assaulted her on October 12, 1960 was a white man and not Virgil Major Wynn.

On June 8, 1961 defendant filed a supplemental motion for new trial on the grounds of this newly discovered evidence, alleging it came to defendant's knowledge "since the trial" and was not known to defendant before the trial; that it was not owing to lack of diligence; that it is so material that it will probably produce a different result in another trial; that it is not merely cumulative. Defendant did not allege that the object of the testimony was not merely to impeach the character or credit of the prosecutrix, for obviously this was its purpose.

On June 23, 1961 the motion for new trial came on for hearing. In support of the motion the two affidavits were offered. Notwithstanding the court's impression that an amended (supplemental) motion for new trial filed could not be considered out of time and that newly discovered evidence would have to be brought to the attention of the court within 30 days, the affidavits were admitted in evidence and one of the affiants was permitted to take the stand and testify. She testified she was 16 years of age; that for four years she had run around and associated with prosecutrix; that two days after the baby-sitting job ("sometime last summer * * * summer of 1960 * * * a little before school started * * * about September, something like that") prosecutrix told the witness that "when she got to the door that * * * white man was standing there and hit her in the head but she didn't get raped * * * that she wasn't raped * * * [that] it was a white man"; that she told her "more than once that the man who attacked her was a white man." The court stated that this showing was not sufficient to justify interference with the jury verdict; overruled the motion for new trial and at the same hearing asked defendant if he had any legal cause to show why judgment and sentence should not be pro-

nounced. Defendant said "I do if you will accept this lady's word here, that I stayed at her house. * * * I am just asking that you hear what she has to say. * * * I am not guilty of rape, the lady hasn't * * *." Interrupting, the court said "The jury said that you were," and proceeded to pass sentence. The lady referred to was named. Nothing in the record indicates what she would have testified to except defendant's statement that she would testify he "stayed at her house."

■■ Defendant's specific complaint is that this newly discovered evidence was not considered *at the time of allocution*. Although defendant was not entitled to have the newly discovered evidence considered on his supplemental motion for new trial,[1] it was so considered, and found insufficient to justify the granting of a new trial. At the same sitting the court granted allocution and sentenced defendant. After the overruling of the motions for new trial there was no occasion, at the same sitting, for the court to immediately reconsider the newly discovered evidence as a prerequisite to the proper granting of allocution. If the newly discovered evidence was not sufficient to justify the granting of a new trial it was not sufficient to prevent the pronouncement of sentence.

The judgment is affirmed.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.

[1]. Because (1) there was no showing that it was not due to lack of diligence that this information did not come to the accused before the trial (inconsistently, defendant states in his brief that "his attorney absolutely refused to call these witnesses during the trial despite the insistence of appellant"); (2) the supplemental motion was filed after the expiration of the period allowed for the filing of a motion for a new trial, State v. Malone, 333 Mo. 594, 62 S.W.2d 909; State v. Smith, Mo.Sup., 256 S.W. 1025; and (3) the obvious purpose of the newly discovered evidence was merely to impeach the credit of the prosecutrix, which has been considered insufficient for a new trial based upon the ground of newly discovered evidence. State v. Rutledge, Mo. Sup., 317 S.W.2d 365, 367.