STATE v. WILLIAM HAYES, Appellant.—No. 40490.—204 S. W. (2d) 723.

Division Two, October 13, 1947.

*Frank E. Mathews* for appellant.

1034

*J. E. Taylor*, Attorney General, and *John S. Phillips*, Assistant Attorney General, for respondent.

 BARRETT, C.—A jury found William Hayes guilty of statutory rape upon Thelma, a child nine year old, and fixed his punishment at ten years in the penitentiary. If the appellant is guilty as the jury could and did find from the evidence, the crime was committed in the appellant's second floor room at 1105 North Vandeventer avenue. Sometimes the appellant called on Thelma's adult sister, Annie, and on the 31st day of August, 1945 stopped at their home, 4062 Finney avenue. He was going to an afternoon picture show and, after some discussion, the older sister permitted Thelma to accompany him. They left the show about four-thirty in the afternoon and were returning to the neighborhood of Vandeventer and Finney avenues in Bennie Rogers' car when a woman, Leona Howard, called to the appellant as the car neared the intersection and the appellant and Thelma got out of the car. Leona wanted the appellant's sugar ration stamp. Thelma says that they then went to the appellant's room, which was but a few doors away, and that the offense was there committed. The appellant then got his ration book, for Annie's use, and walked home with Thelma. The appellant not only denied the offense but denied that he even took Thelma to his room. He claimed, and offered evidence in support of the claim, that Thelma waited on the sidewalk with Leona while he went upstairs and got his ration book, that he gave Leona the sugar stamp and that he and Thelma walked down the street to a grocery store with Leona and on to Thelma's home where he stopped and visited with Annie while Thelma played in the yard.

 Upon this appeal, the appellant contends that prejudicial error was committed in the cross-examination of his witness, Catherine Ellis, in that the state was permitted, in its examination of her, to make an attack upon his character, which was never placed in issue by him, through the use of testimony immaterial to any issue involved in the case.

Catherine was the appellant's landlady and occupied the second floor room directly opposite the appellant's room. She testified on direct examination that during the day the door to her room was open and that she could and did see anyone entering the hallway. The essence of her testimony was that on the 31st day of August, 1945, during the daytime, the appellant did not "bring a child to his room." She did say that she knew Thelma's sister, Annie, and that on one occasion, "the onliest time," she saw her coming out of the appellant's room when he was not there, with his ration book.

On cross-examination the prosecuting attorney asked whether she remembered talking to a police officer in July of 1944, more than one year prior to the date of the alleged offense. She answered by saying that she talked to officers two or three times. Then the prosecuting attorney asked whether she recalled Officer Fletcher coming there and inquiring about William Hayes, the appellant. Appellant's counsel then objected to the question stating that it was an attempt to put appellant's character in evidence when no such issue was in the case. In reply to the objection the prosecutor stated that he proposed to impeach the witness. The objections were overruled and the witness answered, in effect, that she remembered talking to an officer concerning the appellant though she could not remember the exact time. She was again asked whether the conversation was about the appellant and counsel again objected and, apparently aware of what was coming, said "It's an attempt to put his character at issue before this jury, . . ." The prosecuting attorney replied, "I am going to impeach this witness by statements she told police officer in 1944, *that women came to his room frequently.* I'll bring in Officer Fletcher." Upon defense counsel's objection being renewed and after some further colloquy, the court suggested that the witness be asked the direct question; the prosecuting attorney insisting that she had testified on direct examination that women did not come to his room, defense counsel insisting that she had not so testified. The court said, meaning Thelma's sister Annie, that she saw one woman coming in there and that it would affect the credibility of the witness. The prosecuting attorney then asked the question; "Did you ever see William Hayes bring women into his room?" After further objection she answered, "Oh, yes, I've seen women come up there." When asked how often she said, "once or twice a week, something like that." She was then asked whether the women stayed all night and answered that she didn't know anything about that because when she went to bed she shut her door and did not know what happened.

The state argues that the admission of evidence that women visited appellant's room and that the police inquired about it was harmless error because when the appellant testified he explained, from a description of two of the women, that they must have been his sister. It is also argued that the evidence was favorable to the appellant because

it showed that his "tastes ran to grown women, not to little girls" and the fact that police officers talked about him and did nothing shows that they were convinced of his innocence of immorality with them.

But, confining our consideration to the two questions of women coming to his room and the police talking to his landlady about it, in 1944, it is obvious that the evidence does reflect upon his character. The only reasonable inference to be drawn from the evidence is that he was a person of immoral character and for that reason had been investigated by the police. The appellant had not then testified and after he did testify was subject to being impeached as a witness (Mo. R. S. A., Sec. 4081) but, since he did not offer any evidence concerning his reputation, the state could not initially attack his character. State v. Williams, 337 Mo. 884, 87 S. W. 2d 175; State v. Barker (Mo.), 249 S. W. 75; State v. Craft (Mo.), 246 S. W. 930. The policy precluding the state from initially attacking the appellant's character is the avoidance of "uncontrollable and undue prejudice, and possible unjust condemnation, which such evidence might induce." 1 Wigmore, Evidence, Sec. 57, p. 454. The evidence, being inadmissible, should not be declared to be harmless error until it is so without question (State v. Wynne, 353 Mo. 276, 289, 182 S. W. 2d 294, 300) especially in this type of case. State v. Davis (Mo.), 190 S. W. 297.

In considering whether the evidence elicited by the state was harmless error it should be noted, in that connection, that the proof was not of the appellant's general reputation (State v. Edmundson (Mo.), 218 S. W. 864) but was of specific acts of immoral conduct— a married man separated from his wife bringing women to his room, inferentially for immoral purposes. State v. Burgess, 259 Mo. 383, 168 S. W. 740; State v. McDonough, 232 Mo. 219, 134 S. W. 545. In some sex crimes evidence of similar offenses may be or become relevant and admissible, especially if they show a course of conduct, are related to the offense on trial or are connected in some manner with the prosecuting witness. State v. King, 342 Mo. 975, 987, 119 S. W. 2d 277, 283; State v. Cason (Mo.), 252 S. W. 688; State v. Sykes, 191 Mo. 62, 89 S. W. 851; 22 C. J. S. Sec. 691u, p. 1160. But it is not permissible, in general, in a case of statutory rape for the state to prove that the defendant has had illicit relations on some previous occasion with an adult. State v. Bowman, 272 Mo. 494, 199 S. W. 161; State v. Burgess, supra; State v. Cox, 263 S. W. 215; State v. Spinks, 344 Mo. 105, 125 S. W. 2d 60. Here the matter complained of was not in point of fact brought out on direct examination or in any manner introduced into the case by the defendant as was the case in State v. King, supra, and in State v. Perkins, 342 Mo. 560, 116 S. W. 2d 80. In this case none of the recognized exceptions to the general exclusionary rule is made to

appear. The two acts shown by Catherine do not tend to show intent in this case because the act complained of, if shown, speaks for itself; they do not necessarily tend to show motive, malice, or a general plan or a scheme, and there was no question as to the appellant's identity. State v. Shobe (Mo.), 268 S. W. 81, 82. The evidence elicited was an improper attack upon appellant's character and it was prejudicial. State v. Burgess, supra; State v. McDonough, supra; State v. Bowman, supra; State v. Cox, supra.

This, of course, has nothing to do with the state's right to ask Catherine, as a witness, discrediting questions or to impeach her, even by proof of specific acts of misconduct if the proof discredits or reflects upon her. State v. Daugherty (Mo.), 126 S. W. 2d 237; State v. Davis. 284 Mo. 695, 225 S. W. 707; State v. Blocker (Mo.), 278 S. W. 1014; State v. Nasello, 325 Mo. 442, 464, 30 S. W. 2d 132, 140. But the state was bound by her answers regarding purely collateral matters. |State v. Bagby, 338 Mo. 951, 964, 93 S. W. 2d 241, 248; State v. Cox (Mo.), 263 S. W. 215, 219.

There is no occasion for discussing the other assignments of error as they are not likely to arise upon a second trial of the cause. Because of the error noted the judgment is reversed and the cause is remanded. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.