STATE OF MISSOURI, Respondent, v. ROY HOWARD WHIPKEY, Appellant. —No. 41056.—215 S. W. (2d) 492.

Division Two, December 13, 1948.

*Morris A. Shenker* for appellant.

*J. E. Taylor,* Attorney General, and *Samuel M. Watson,* Assistant Attorney General, for respondent.

[493] WESTHUES, C.—Appellant, Whipkey, appealed from a judgment of conviction of murder in the second degree. The punishment assessed was life imprisonment.

The state's evidence justifies the following statement. On the evening of July 29, 1946, at about 8:30, there were eight or more persons in a tavern located at 2023 North Broadway, St. Louis, Missouri. Among those present were Lewis Berg and deceased, Bobbie Jean Kerr. Berg purchased drinks for those sitting at the bar and while

in the act of paying for them defendant entered and immediately went up to Berg and Bobbie Jean. One witness stated that he saw defendant stab Berg in the back, whereupon Bobbie Jean screamed; that the defendant then immediately stabbed Bobbie Jean three times. One of the men present picked up a chair and struck the defendant and a fight followed. Bobbie Jean ran from the tavern and collapsed on the sidewalk. Berg fell upon the floor of the tavern. Defendant ran from the tavern, pursued by a number of men, and while in the street attempted to cut his own throat. He then ran back to where Bobbie Jean was lying on the sidewalk, face down, and stabbed her three times in the back. She was taken to a hospital where she was pronounced dead and from there her body was taken to a morgue. A number of witnesses testified appellant had a butcher-knife in his hands. The above statement of what happened is supported by the evidence of practically all of the eye-witnesses. The state's evidence disclosed that the defendant and Bobbie Jean had been keeping company [494] and had lived together in the State of California. The state also produced evidence that while in California the defendant had threatened that if Bobbie Jean ever left him, or if he ever found her with another man, he would kill her. There was evidence that on the evening of the tragedy the defendant was looking for deceased and called at her home three times.

Defendant testified in his own behalf. His version was about as follows: That he walked into the tavern, saw a number of people but knew none of them; that he did not see the deceased or Berg, but that they came in later and were standing close by when the man next to him turned over a glass of beer and immediately grabbed his shoulder and struck him, whereupon a free-for-all ensued; that he saw Bobbie Jean and that she attempted to stop the fight, in particular she tried to prevent the others from striking him, the defendant. He testified he loved Bobbie Jean and would not have hurt her under any circumstances. He denied making any threats against her when in California and stated that he had no knife, stabbed no one and only defended himself against the assaults made upon him. Defendant was taken to a hospital and his most serious wound was found to be a cut across the throat which had severed the windpipe. He also had other bruises and cuts.

■ Appellant briefed many points seeking a reversal of the conviction. We will discuss two of these which in our opinion require the granting of a new trial. Other points will be considered very briefly. The first question briefed is, that the court erred in giving instruction number six on the credibility of witnesses. The portion of the instruction alleged to be erroneous is the "falsus in uno, falsus in omnibus" clause. It reads as follows:

"In this connection you are further instructed that if you believe that any witness has knowingly and wilfully sworn falsely to any

material fact, you should reject all or any portion of such witness' testimony.''

We are of the opinion that the clause, ''. . . you should reject all or any portion of such witness' testimony,'' invades the province of the jury and renders the instruction erroneous. See 23 C. J. S., sec. 1180, page 720; State v. Cushing, 29 Mo. 215; State v. Waller, 259 S. W. 445; State v. Tucker, 62 S. W. (2d) 453, l. c. 456 (8, 9), 333 Mo. 171, l. c. 179 (8). Such instructions should inform the jury in substance that if any witness has wilfully and knowingly sworn falsely as to any material fact in issue it should disregard such false testimony and *may* reject any or all such witness' testimony. 23 C. J. S. 720, sec. 1180; State v. Mounce, 17 S. W. 226, 106 Mo. 226. It is within the province of the jury and not the court to determine whether any or all of a witness' evidence is to be believed. That is so elementary that further comment is not necessary.

Appellant also contends that the court should have instructed on self-defense and accident. The state claims that the evidence did not justify the giving of either instruction. To decide this question we must examine the record and if there is evidence to support appellant's theory, then we must hold instructions should have been given covering that theory. Appellant's evidence, as above briefly outlined, is that he was assaulted by an unknown man and a general fight followed; that all he did was to defend himself. The state introduced evidence that when defendant ran from the building he was pursued by two men who had pieces of broken chairs in their hands. The defendant further testified that while he was in the tavern the following occurred:

''Q. Did you see anyone there besides Mr. Berg and Miss Kerr that you knew? A. No, I don't believe I did.

''Q. You say you never saw this State's Exhibit A in your lifetime before you saw it in the courtroom, is that right? A. Repeat that question, will you please?

''Q. You say you never in your lifetime saw State's Exhibit A, this knife, is that right? A. That's right.

[495] ''Q. You don't know who cut you nor with what you were cut, is that right? A. That's right.

''Q. Didn't see anybody have a knife? A. No, I couldn't say truthfully that I did.

''Q. Do you know where you were when you lost consciousness? A. Inside the tavern some place; I don't know.

''Q. Were you inside or outside? A. Inside. I don't remember the outside.''

''Q. I will change that: Mr. Whipkey, did you do everything you could to defend yourself? A. Yes, sir.

"Q. Did you swing at people the same as they were swinging at you? A. Yes, sir.

"Mr. Burns: Your honor, I want to object to that.

"The Court: Overruled.

"Q. Bobbie Jean was trying to stop them from hitting you, is that right? A. To the best of my knowledge that's what she was doing.

"Q. She was right in the midst of them, is that right? A. That's correct.

"Q. Did you grapple for different things? A. That's right.

"Q. Chairs and any objects that were available at that time, is that correct? A. That's right.

"Q. Do you recall every having this knife in your hand? A. No."

It will be noted that appellant did not claim he struck deceased in self-defense. Indeed, he said she was trying to aid him and prevent others from striking him. If in the general fight defendant struck at the parties assaulting him and accidentally struck the deceased causing her death it was accidental homicide. See 40 C. J. S., page 981, sec. 112 (c). However, to entitle him to an acquittal on that theory the defendant must have been justified in acting in self-defense as against the third parties. In such a situation instructions should be given guiding the jury in deciding the question. See State v. Stallings, 334 Mo. 1, 64 S. W. (2d) 643, l. c. 644 (2); State v. Stallings, 326 Mo. 1037, 33 S. W. (2d) 914, l. c. 916 (2); State v. Crowley, 345 Mo. 1177, 139 S. W. (2d) 473.

As mentioned above, a number of points were briefed which we need not consider. For example, there was a slight change made in one of the instructions after the jury had deliberated on a verdict for some time. Another point was based on reference being made to the defendant by an alias. The record shows that this was entirely unintentional.

■ We will now consider briefly a number of other minor points preserved for review. Appellant says the trial court erred in admitting evidence of a threat alleged to have been made by defendant against the deceased while in the State of California. Appellant relies upon the remoteness of the threat. We deem the evidence entirely competent. The defendant is alleged to have said he would kill the deceased if he found her with another man. That is what the state contends the defendant did. The threat, if made, was evidence of motive and even if rather remote was admissible. 40 C. J. S., page 1178, sec's. 242, 243.

■ Appellant urges that evidence of a prior conviction was erroneously admitted because the indictment alleged the defendant had been convicted of robbery in the first degree but that the state offered evidence the defendant had been convicted of robbery in the first

degree by means of a dangerous and deadly weapon. There is no merit in this point. The variance, if there was any, was immaterial. Robbery by means of a deadly and dangerous weapon is in fact robbery in the first degree. The statute so designates the offense. See sec's. 4450 and 4453 Mo. R. S. A., R. S. Mo., 1939. Sec. 4453 merely fixes a greater punishment in case a robbery is perpetrated by means of a dangerous and deadly weapon. In State v. Shuls, 44 S. W. (2d) 94, 329 Mo. 245, we held that robbery in the first degree included an act committed with or without a dangerous weapon. See also State v. Curtis, 23 S. W. (2d) 122, 324 Mo. 58.

█ Again, appellant says the trial court should have stricken from the indictment all reference to a prior conviction because the indictment failed to allege the *date* of defendant's discharge from the [496] penitentiary. We hold this was not necessary. The indictment charged that ". . . the said Roy Howard Whipkey, aliases, was duly discharged from said penitentiary of the State of Missouri after and upon lawful compliance with said sentence." This was sufficient.

█ After the police arrived on the scene they asked defendant about the occurrence in question and he refused to answer. The state was permitted to prove this by the police officers. Defendant objected but the objection was overruled. We discussed this question in the case of State v. Battles, 357 Mo. 1223, 212 S. W. (2d) 753, l. c. 756, 757 (6) (7, 8) (9) (10). On a retrial the opinion in the Battles case will serve as a guide. We need not lengthen this opinion by repeating what was there said.

█ The last point briefed is that the trial court unduly restricted defendant's attorney in his cross-examination of state's witnesses, particularly as to a witness who was asked if she had been guilty of certain conduct, an affirmative answer to which would have tended to discredit her as to her chastity. The extent of such examinations rests largely within the discretion of the trial court and unless clearly abused an appellate court will not interfere. 70 C. J. 894, sec. 1098. We must also note that since the case of State v. Williams, 100 A. L. R. 1503, 337 Mo. 884, 87 S. W. (2d) 175, the reputation of a witness for truth and veracity cannot be impeached, unless put in issue by the other party, by showing he bears a bad reputation for morality. It would seem only logical then that the same should be true as applied to cross-examination on specific acts of conduct, affirmative answers to which would tend to impeach the witness as to chastity. 70 C. J. 874, sec. 1093; 28 R. C. L. 610, sec. 200; Butler v. State, 113 So. 699, l. c. 700 (2); Kolb v. Union R. Co., 23 R. I. 72, 49 Atl. 392. What was said in the Williams case on this subject is also applicable to the question now presented for review. No useful purpose will be served by again considering the matter at length. In the case of State v. Bagby, 338 Mo. 951, 93 S. W. (2d) 241, l. c. 248, a witness

was asked if he did not make his place a hideout for notorious criminals. This court held that the state had a right to ask such a question for the purpose of discrediting the witness by impeaching his character. The question now before us was not discussed or presented for review. The witness in that case was a bondsman for a defendant charged with robbery. If the witness maintained a hideout for notorious criminals it tended to discredit him as a witness because of his friendliness and interest in the defendant. That is a different situation than what we have before us now. Evidence of moral character and chastity is often made an issue in a case and when this is done evidence on the subject is admissible. See the case of State v. Ferguson, 182 S. W. (2d) 38, l. c. 41, 42 (7-9) (10,11), 353 Mo. 46, l. c. 53 (3). We hold the trial court did not err in its ruling in sustaining the objection to the cross-examination.

For the error indicated the judgment is reversed and the cause remanded for retrial. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur except *Leedy, J.,* absent.