STATE of Missouri, Respondent,

v.

Charles KAIN and Don Ivan Leslie, Appellants.

No. 47341.

Supreme Court of Missouri,

Division No. 2.

Jan. 11, 1960.

R. M. Gifford, Green City, for appellants.

John M. Dalton, Atty. Gen., Julian L. O'Malley, Asst. Atty. Gen., Jefferson City, for respondent.

BOHLING, Commissioner.

This is an appeal by Charles Kain and Don Ivan Leslie from a judgment imposing a sentence against each defendant of seven years' imprisonment for forcibly ravishing Sylvia M. Knowles, a female of the age of eighteen years. Section 559.260 RSMo 1949, V.A.M.S. The only issues presented in defendants' brief that need be considered relate to the admission and exclusion of certain testimony.

Defendants do not question the sufficiency of the State's evidence to make a submissible case, but certain facts are outlined for a better understanding of the issues briefed.

On the evening of April 18, 1958, prosecutrix accompanied Robert (known in the record as Bob) Ruggles, 19 years old, prosecutrix's brother Raymond, 16, her nephew Bobby Exline, 20, Billy Casteel, 15, and Jerry Jarman, 12, from Unionville, Putnam County, to Milan, Sullivan County, in Ruggles' 1946 Chevrolet automobile. They started home about midnight. About a mile out of Milan on the return trip their vehicle "ran out of gas." Exline and Casteel started walking back to Milan to secure gasoline. Soon thereafter, defendants, with Paul Stephenson and two other boys in a 1950 Plymouth, stopped and, after being informed of the situation, offered to take Ruggles and prosecutrix to Milan, pick up Exline and Casteel and the gasoline, and return to the Chevrolet. Defendant Kain, with prosecutrix and Ruggles in the Plymouth, drove into Milan, where they saw Exline, Casteel and the night watchman at a service station. Defendant Leslie said the night watchman would take the boys back to Ruggles' car, and Kain did not stop but, saying he was taking a shorter route, drove on. Kain stopped the Plymouth out in the country and the boys in his group got out. Prosecutrix heard them whispering and suggested to Ruggles that they get out and walk back to town. She was permitted to get out, but when Ruggles started to get out he was pushed back into the car and told "you ain't going no place." Thereafter the offense charged was committed by Kain and Leslie with help from some others in their group. Prosecutrix escaped about 3:00 a. m., ran to the farm home of Lloyd Michael, and told what had happened. Later, Stephenson and the two younger boys took Ruggles in the Plymouth to his car and released him. Defendants Kain and Leslie were arrested at the home of Stephenson about 7:00 a. m.

■ Defendants contend the court erred in permitting the testimony at the preliminary hearing of Robert Ruggles, who was not present at the trial, to be read in evidence over their objections. Such evidence is admissible upon a proper showing. State v. Harp, Banc, 320 Mo. 1, 6 S.W.2d 562 [2]; State v. Lloyd, 337 Mo. 990, 87 S.W.2d 418, 420 [3], and cases cited.

The preliminary hearing was held May 1, 1958. Ruggles there testified he lived with his parents at Unionville and his testimony covered what occurred in his presence while prosecutrix and he were with the Kain group until her escape, his release, and his actions thereafter. Defendants were present in the Magistrate

Court at the hearing, were afforded an opportunity to question the witnesses, but were not represented by counsel. Miss Ethel Calfee, the Official Court Reporter for Sullivan County, took the testimony of the various witnesses at the preliminary hearing in shorthand and thereafter transcribed the same. She testified that Ruggles testified under oath, in the presence of defendants, and that her transcription of his testimony was correct. The record discloses that on September 4, 1958, a subpoena was issued for Bob Ruggles and other named witnesses for the trial of this case on September 11, 1958. The Sheriff of Putnam County made return thereon, reciting that he had "served the within writ by reading the same to the following within named witnesses," in the County of Putnam on the dates and at the places hereinafter set forth, including "Bob Ruggles, Unionville, Mo." The date of service is not shown. This subpoena, with the sheriff's return, was filed September 11, 1958. The Sheriff of Putnam County testified that Ruggles' mother showed him a letter that had been written by Ruggles in Iowa stating he would be present at the trial, "and that is the reason I showed it served." He also stated he had telephoned a sheriff in Iowa, asking him to "get hold of" Ruggles, but had not heard from him. He offered to change his return on the subpoena with respect to witness Ruggles but was not permitted to do so by the court. The mother of witness Ruggles stated in an affidavit attached to defendants' motion for new trial that the Sheriff of Putnam County did not see or talk to her about the witness appearing at the trial set for September, 1958.

■ In State v. Gallina, 352 Mo. 557, 178 S.W.2d 433, 434, we held there was no sufficient showing of diligence for the admission of the testimony at a former trial of an absent witness. In that case there was a showing that the State's attorney talked to the witness over long distance telephone, she having moved from the place of the venue to another county in the state, in an effort to have the witness present. A letter to the witness' new address was thereafter returned unopened, and a long distance telephone conversation with the witness' daughter brought the information that the witness had gone to Colorado but the daughter could not give the witness' address and did not know when the witness would return to Missouri. No subpoena was issued for the witness. In the instant case a subpoena was issued for witness Ruggles seven days prior to the trial and the Sheriff's return, showing service, was filed on the day of the trial. However, the testimony of the officer established the falsity of his return. We conclude there was no sufficient showing of diligence on the part of the prosecuting officials to locate and secure the presence of witness Ruggles at the trial and the admission in evidence of his testimony at the preliminary hearing constituted prejudicial error. Compare the diligence shown in State v. Harp, supra, 6 S.W.2d 563 [2]. See also State v. Lloyd, supra, 87 S.W.2d 420 [4]; 23 C.J.S. Criminal Law §§ 892 et seq., p. 117; 14 Am.Jur., Criminal Law, 895, § 187; 20 Am.Jur., Evidence, 593, § 706; Annotation, 159 A.L.R. 1240, IV, and annotations there cited.

Although the convictions must be reversed for the errors noted, we will consider other questions relating to the admission of evidence to the extent that they are likely to arise on a retrial of the case. The defendants contend that the trial court erred in excluding portions of the testimony of two defense witnesses as to the general reputation of the prosecuting witness for "truth, morality and virtue". This character evidence was offered as bearing on the issue of consent and lack of resistance as well as for impeachment. The defendants did not testify and these two witnesses were the only witnesses offered on behalf of the defendants. The information charged forcible rape and the defendants entered pleas of not guilty. The state does not contend that the issue of consent and lack of resistance was not in the case.

Also during the cross-examination of the prosecuting witness, the defendants sought to interrogate her with respect to specific acts of immorality with other men, which testimony was excluded on the state's objection. In their offer of proof, the defendants stated the purpose of the examination was "to show by the cross examination of this witness as bearing upon the question of consent and the showing of the lack of resistance on the part of the complaining witness".

The *credibility* of a witness in a criminal case may not be impeached by showing that his general reputation for morality is bad; such an attack must be addressed directly to the reputation of the witness for truth and veracity. State v. Williams, 337 Mo. 884, 87 S.W.2d 175, 180 [9], 182, 100 A.L.R. 1503. The Williams case dealt with the accused as a witness, but in order to reach its conclusion, the court had to decide whether "any other witness" could be so impeached because the statute, Section 546.260 RSMo 1949, V.A.M.S., provides that a defendant in a criminal case who testifies "may be contradicted and impeached as any other witness in the case." The Williams case has been followed on this point by State v. Menz, 341 Mo. 74, 106 S.W.2d 440, 450, State v. Hayes, 356 Mo. 1033, 204 S.W.2d 723, 725, State v. Whipkey, 358 Mo. 563, 215 S.W.2d 492, 496; and State v. Lora, Mo., 305 S.W.2d 452, 455.

The Williams case was a prosecution for murder and the opinion calls attention to the fact that Professor Wigmore, in his treatise on Evidence, Vol. 3, 3d Ed., § 924a, advocates an exception in prosecutions of men charged with sexual crimes against women as at least a partial protection against "the sinister possibilities of injustice that lurk in believing such a witness without careful psychiatric scrutiny." p. 460. The prosecutors and trial courts already have a considerable latitude in dealing with the abuses suggested by Professor Wigmore. There is no assurance that permitting the witness' credibility to be attacked by proof of her bad repute for chastity would remedy the situation and it might open the door to other and greater abuses. There appears to be no logical justification for excepting forcible rape from the operation of the general rule. See State v. Hayes, 356 Mo. 1033, 204 S.W.2d 723, 725 [4], and cases there cited.

As a general rule, in a prosecution for rape where consent or lack of resistance is an issue, an attack upon the character of the prosecuting witness for morality and chastity can only be made by evidence of her general reputation in that regard and not by proof of specific acts of misconduct with other men. State v. Taylor, 320 Mo. 417, 8 S.W.2d 29, 34 [3, 4]; State v. Stevens, 325 Mo. 434, 29 S.W.2d 113, 115 [3]; State v. Hewitt, Mo., 259 S.W. 773, 781–782 [12]; State v. Guye, 299 Mo. 348, 252 S.W. 955, 960 [8]; State v. White, 35 Mo. 500, 501; 75 C.J.S. Rape § 63, p. 535; 44 Am.Jur., Rape § 92, p. 961. See annotation 140 A.L.R. 382.

In the Taylor case which involved rape by force, this court stated, 320 Mo. 417, 8 S.W.2d 29, 34 [3, 4]: "The alleged evidence of the other absent witnesses related solely to previous acts of sexual intercourse in which the prosecutrix indulged willingly. Such evidence was incompetent for any purpose, and therefore the defendant lost nothing by the absence of such witnesses. Want of chastity cannot be shown except by general reputation, and then only on the issue of consent. * * *" See also State v. Hewitt, Mo., 259 S.W. 773, 781 [12–14]. These cases refer to the scope of the testimony of third persons with respect to the chastity of the prosecutrix. Consult also State v. Catron, 317 Mo. 894, 296 S.W. 141, 144 [5].

Generally the prosecuting witness in a forcible rape case may not be cross-examined with regard to specific acts of immorality either for impeachment or as bearing on the issue of consent. State v. Osborne, Mo., 246 S.W. 878, 879 [1]. See also State v. Whipkey, 358 Mo. 563, 215

S.W.2d 492, 496 [8–11]. The Osborne case involved a charge of an assault with intent to commit rape. We reviewed Missouri cases and held the trial court did not err in refusing to permit the cross-examination of prosecutrix with respect to specific improprieties with other men as touching her character as a witness or as to whether she consented. It is there stated that obiter dictum to the contrary in State v. Patterson, 88 Mo. 88, 92, 57 Am.Rep. 374, a seduction case, had never become the law of this state. There may be issues or circumstances justifying the admission of evidence of specific acts of unchastity, but none of them appear in this case. See 75 C.J.S. Rape § 63, p. 535.

■ Within these general rules the scope of the cross-examination of such witnesses is largely within the discretion of the trial court. State v. Brotherton, Mo., 266 S.W.2d 712, 714–715 [3]; 98 C.J.S. Witnesses § 515j, p. 440.

Observations stressed by defendants in State v. Wilkins, Mo., 100 S.W.2d 889, 894, to the effect the court in the exercise of its proper discretion should have permitted prosecutrix to be cross-examined with respect to certain alleged immoral conduct to discredit her as a witness are dictum as the precise point ruled was that error had not occurred because defendants' counsel refused to avail himself of the court's offer (reversing its previous ruling) to recall prosecutrix for further cross-examination on the issue; and, further, said observations are out of harmony with the Williams and Whipkey cases, supra, as well as other cases. See also the views of Gantt, J., (for the majority) and Burgess, J., as to a bad reputation for chastity affecting the credibility of persons of different sex as witnesses in State v. Sibley, 131 Mo. 519, 531 [4, 5], 132 Mo. 102, 33 S.W. 167, 170 [4, 5], 172. A number of defendants' citations (State v.

Shields, 13 Mo. 236; State v. Grant, 79 Mo. 113, 49 Am.Rep. 218; State v. Pollard, 174 Mo. 607, 618, 74 S.W. 969, 971, cases involving reputations for chastity), and other cases directly or indirectly following State v. Clinton, 67 Mo. 380, 391, 29 Am. Rep. 506, stand overruled by State v. Williams, supra.

■ The court properly refused to permit the interrogation of the prosecuting witness with regard to specific acts of misconduct and did not err in rejecting the offer of proof. On retrial qualified witnesses should be permitted to testify with respect to the general reputation of the prosecuting witness for truth and veracity and also as to her general reputation for morality and chastity as bearing on consent or lack of resistance if such issue is properly presented.

■ Objection was made to the qualifications of the two witnesses offered by the defendants. A person possessing the necessary testimonial qualifications, that is, acquaintance with the general reputation of the witness in the neighborhood or among the people with whom the witness associates for the character trait in question, may testify concerning such reputation. State v. De Shon, 334 Mo. 862, 68 S.W.2d 805, 809 [6, 7]; State v. Fairlamb, 121 Mo. 137, 152, 25 S.W. 895, 899; 98 C.J.S. Witnesses § 524 p. 450; 58 Am.Jur., Witnesses §§ 725, 727, 730.

The judgment is reversed and the cause is remanded.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.