**STATE of Missouri, Plaintiff-Respondent,**

v.

**Jerome Oliver WILLIAMS, Defendant-Appellant.**

No. 34843.

Missouri Court of Appeals,
St. Louis District,
Division One.

Feb. 20, 1973.

**2**

Karl F. Lang, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., David Robards, Asst. Atty. Gen., Jefferson City, J. Brendan Ryan, Circuit Atty., James E. Darst, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

McMILLIAN, Judge.

This is an appeal by Jerome Oliver Williams, defendant, from a judgment of conviction of armed robbery in the first degree, and a subsequent sentence by the court of twenty years in the custody of the Department of Corrections pursuant to the Second Offender Act. Defendant appealed.

Defendant claims that the trial court erred by allowing the State to cross-examine his alibi witness with regard to alleged prior misconduct which had never been the basis of either a formal charge or conviction. After due consideration of the claim of error, we resolve the point against the defendant and affirm the conviction.

To add color to defendant's claim, a brief evidentiary background is in order. On Thursday, May 27, 1971, Sid's Medi-Center Drugstore on Thirteenth Street in St. Louis was robbed of $114.00 by an armed black man described as six feet tall, medium build, weighing one hundred sixty to seventy pounds. When the robber entered the store, he confronted a clerk, Charles Payne, showed a pistol, and demanded that the cash register be opened. Payne replied that he would have to obtain permission from his employer and the owner of the store, Sidney Arkush, before the register could be opened. Both men then walked to the prescription counter, where the robber pushed Payne aside and leveled his pistol on Arkush. Arkush was ordered to open the cash register, and the robber took money from the register drawer. Subsequently the robber took his hostages to two other areas of the drugstore and removed money from two additional cash registers. Payne estimated at trial that the entire affair lasted five or six minutes, but Arkush testified that in his opinion the robber was in the store for fifteen minutes.

Defendant was arrested the following Monday, June 1, 1971, by St. Louis police detective David Fletcher and was taken to the station house where he was placed in a

lineup with four other black men. Although Payne had no trouble identifying the defendant in the lineup, Arkush was somewhat uncertain. Yet he did pick out the defendant, and he said the defendant bore a similarity to the robber. At the trial Arkush said while he was uncertain defendant was the man who robbed him, defendant did bear a "fantastic" similarity and likeness to the robber.

Defendant and Mrs. Juanita Jones, an alibi witness, testified for the defense. Defendant admitted two prior felony convictions, but he denied the robbery with which he was charged. He said that on the evening of the drugstore holdup he was helping Mrs. Jones paint her five-room apartment; that this task started on Monday and was not finished until Friday; and that on the day of the robbery, Thursday, he arrived at the Jones' apartment in the early morning and did not leave until 8:00 or 9:00 P.M. On cross-examination, defendant said that he used ten gallons of paint, some of which he obtained from the Housing Authority and some of which he purchased from a hardware store.

Mrs. Jones corroborated defendant's alibi; however, there were some differences from defendant's accounting of his activities during the week of painting. She said that all of the paint used in the apartment came from the Housing Authority, that defendant did not buy any paint, and that the work began on Tuesday, not Monday. While she admitted being asked by Officer Fletcher on June 1 whether or not she had seen defendant the previous week, she denied telling him that she could not be sure of defendant's whereabouts on the day of the robbery.

During Mrs. Jones' cross-examination the following colloquy took place which sets the stage for defendant's claim of error.

"Q. Let me ask you another question: You were recently shot in the foot, were you not?

"A. Now what's that got to do with this?"

*    *    *    *    *    *

"Q. (By Mr. Darst) Now, Mrs. Jones, before we,—Well, that's all right. Let me ask you this question: It's true, is it not, that you made a false report to the police?

"A. No, it's not true.

"Q. Let me ask my question if I may, please. It is true, is it not, that you told the police a lie concerning the shooting incident at the time it was reported to the police?

"BY MR. DELWORTH: Just a minute. I want to interpose an objection to that question. It's irrelevant, immaterial, incompetent and that is an improper attempt at impeachment of this witness.

"THE COURT: Overruled.

"THE WITNESS: No, it's not true."

After the first of this series of questions, the trial court told opposing counsel, who had approached the bench, that he would not permit Mrs. Jones to be cross-examined on collateral issues. Mr. Darst indicated he intended to interrogate the witness on an alleged false report she made to police officers concerning the shooting. Citing State v. Foster, Mo., 349 S.W.2d 922 and the Corpus Juris Secundum as authority permitting his line of questioning, Mr. Darst requested to go into chambers with the trial judge and opposing counsel.

Since the following hearing was in camera, we have no record of what transpired, a fact which makes our task here doubly difficult. Hopefully, trial judges will hereinafter transcribe all those in chamber conferences that specifically deal with substantive matters of the proceedings.

When the trial was resumed, Mr. Darst was permitted to ask his question whether

Mrs. Jones had lied to police in reporting a shooting incident. Her answers were negative. Defense counsel entered his objections and was overruled.

Defendant asserts error by the trial court in permitting an impeachment of his one and only witness by showing her general reputation for morality was bad, contrary to Missouri law limiting such attacks to a witness' reputation for truth and veracity, and in allowing the State to cross-examine the witness regarding an alleged criminal offense for which she had not been convicted, also contrary to State law. He further claims that the prosecutor's questioning was not conducted in good faith.

■ Since State v. Williams, 337 Mo. 884, 87 S.W.2d 175, 100 A.L.R. 1503, the law has been well settled in Missouri that a defendant who takes the stand in his own behalf or a witness cannot be impeached by proof of a bad reputation for morality or proof of any specific act indicating moral degeneration. In a unanimous en banc decision the Court said: ". . . to avoid ambiguity and injustice to the defendant as far as possible, it seems better that the impeaching testimony should be confined to the real and ultimate object of the inquiry, which is the reputation of the witness for truth and veracity." 87 S.W.2d 175, 182. In so holding, the Court reversed a second degree murder conviction because the trial court permitted the State in rebuttal to appellant's testimony to prove through six witnesses that appellant had a bad general reputation for morality in the community.

The Williams rule was extended to the situation now in issue—cross-examination of a witness for the purpose of impeachment—in State v. Whipkey, 358 Mo. 563, 215 S.W.2d 492. Appellant in that case had sought unsuccessfully to cross-examine a state witness about specific acts reflecting on her chastity. Calling attention to the Williams rule that impeachment be confined to reputation for truth and verac-

ity, the Court said, ". . . It would seem only logical then that the same should be true as applied to cross-examination on specific acts of conduct, . . ." and upheld the trial court's decision to exclude such questions, 215 S.W.2d 492, 496.

■ The Whipkey decision also reiterated two established principles relating to cross-examination and impeachment. First, the scope of cross-examination and the determination of which matters may bear on a witness' credibility are largely within the discretion of the trial court. Appellate courts will not interfere with these decisions unless a clear abuse of discretion is shown. And second, when a cross-examiner questions a witness about specific acts collateral to the issues in dispute, he is bound by the witness' answer. He cannot offer evidence to the contrary, unless, of course, the character of the witness has been put in issue on direct examination. See also State v. Parton, 487 S.W.2d 523 (Mo.1972); State v. Brotherton, Mo., 266 S.W.2d 712; Arnold v. Alton R. Co., 348 Mo. 516, 154 S.W.2d 58; State v. Hayes, 356 Mo. 1033, 204 S.W.2d 723; and Hoffman v. Graber, Mo.App., 153 S.W.2d 817. Further support for the Court's rulings in Williams and Whipkey may also be found in many other jurisdictions and with the text writers. See 2 McCormick on Evidence, §§ 41, 42 (2d Ed.); 3A Wigmore, Evidence, §§ 981–983 (Chadbourn rev. 1970); 98 C.J.S. Witnesses § 515; 58 Am. Jur., Witnesses, § 759; and the Federal Rules of Evidence, Rules 608.

In the case before us, however, defendant raises a situation where there is no easily definable distinction between questions which bear on a witness' credibility and those which merely tend to degrade him and prejudice the defendant. But a review of previous cases dealing with these issues provides us with rough boundaries within which interrogation into specific and collateral acts may be proper.

■ It is clear that a cross-examiner cannot delve into a witness' reputation for

chastity or sexual morality to show a poor reputation for truth and veracity. Thus, when a trial court permitted the State to ask the defense witness about her allegedly illegitimate children, the Court found an abuse of discretion. State v. Spencer, Mo., 472 S.W.2d 404. Similarly, a prosecution witness could not be impeached by questions tending to show that she was a prostitute or lived by immoral means, State v. Cox, Mo., 352 S.W.2d 665, nor could a State witness be cross-examined about the number of boy friends she may have had, State v. Curry, Mo., 372 S.W.2d 1. It was reversible error and abuse of the trial court's discretion to permit interrogation of the defendant in a manner tending to show that he worked in a brothel and assisted in prostitution. State v. Taylor, Mo., 473 S.W.2d 385.

■ Cross-examination which attacks the witness on the basis of alleged over-indulgence in alcoholic beverages is also improper. In State v. Brotherton, supra, the Court upheld a trial court decision excluding questions directed to a state witness about specific acts of drunkenness, blackouts, or prolonged absences from his home. A query whether a state witness had been drinking the day of trial was held proper at the discretion of the trial court in State v. Lane, Mo., 371 S.W.2d 261, but presentation of evidence of the drunkenness following a negative answer from the witness was abuse of discretion and against the rule that the cross-examiner "must take his answer." In that case the Court noted in dicta that the evidence of drunkenness at the time of testimony presented a different issue.

In some cases, questions have been permitted which do not go directly to the issue of credibility but show bias on the part of the witness, which in turn may affect credibility. Thus, in State v. Perkins, 342 Mo. 560, 116 S.W.2d 80, the Court approved cross-examination of a state witness implying that he may have received and concealed stolen chickens. But the defendant in that case was charged with

stealing chickens, and questions indicating that a principal witness against defendant was himself a chicken thief or "fence" would seem relevant to show bias or motive. The Court noted that a witness being cross-examined could be asked any question which tested his credibility, ". . . however irrelevant it may be to the facts in issue, and however disgraceful the answer may be to himself . . ."

State v. Bagby, 338 Mo. 951, 93 S.W.2d 241 presents a more difficult problem, particularly since it is raised by the State on this appeal. The prosecution in that case was permitted to ask a defense witness if he knew Pretty Boy Floyd and the Barrow brothers, notorious criminals, and if he maintained a hide-out on his farm for such persons. With little explanation of the decision, the court said that State had a right under the State v. Williams, supra, rule to ask these questions in good faith. While this case might seem to open the door to specific acts which have no apparent relation to the witness' credibility, it was distinguished later in State v. Whipkey, supra. There the court said that the witness questioned in State v. Bagby, supra, was in fact a bondsman for the defendant and questions about his associations with and concealment of notorious criminals went to the issue of his interest in the defendant and his motive for testifying as he did. State v. Whipkey, 215 S.W.2d 492, 496. Other difficult problems with cross-examination directed to specific collateral acts arise in cases where the charge concerns sex offenses, but these problems are not relevant here.

■ Given the rough boundaries to cross-examination described above, we come to the first issue of this appeal. Defendant asserts that the three questions to his alibi witness by the State were intended to show a bad general reputation for morality and were therefore improper. We think otherwise. Mrs. Jones was asked once whether she made a false report to police and once whether she lied to the police. A previous question was directed at

laying groundwork for those following. The questions therefore concerned a specific instance about which Mrs. Jones may have lied or made a false report. This goes directly to her veracity. If she cannot be trusted to make a truthful report to authorities, the jury may reasonably infer that she cannot be trusted on the witness stand. It is immaterial that she may have been degraded or embarrassed by the answers to these questions, if she had answered affirmatively. See State v. Perkins, 342 Mo. 560, 116 S.W.2d 80, 85.

While there are no Missouri cases directly on point to support this ruling, a decision from the Ninth United States Circuit Court of Appeals is worth mentioning, particularly since that jurisdiction then recognized more restrictive limits on cross-examination than we do here. In Lyda v. United States, 9th Cir., 321 F.2d 788, 793, the appellate court upheld the trial court's decision to permit cross-examination of a defense witness as to instances when he used a false name, while in jail, when applying for a tourist permit, and when registering at a motel. The court said: ". . . The issue is whether the use of false names bears directly enough upon the witness' veracity as to outweigh the general prohibition against cross-examining about particular acts of misconduct other than convictions of a crime. We think it does. If a man lie about his own name, might he not tell other lies? . . ."

■ Defendant next assigns error in permitting cross-examination regarding an alleged prior criminal offense for which the witness had never been convicted, against the general rule prohibiting such interrogation. He cites in support of his contention State v. Sanders, Mo., 360 S.W.2d 722, 725 where the Court said that ". . . a witness' credibility may not be attacked by showing a mere arrest, investigation, or criminal charge which has not resulted in a conviction . . ." The prosecution in that case had asked a defense witness about a police investigation

involving her, and when she answered in the negative, produced a police officer who testified in rebuttal. The error was therefore double, in permitting the question, and in violation of the rule that the cross-examiner is bound by the witness' answer.

■ While an adverse party is privileged under statute to ask a witness about the nature of prior criminal convictions, whether felony or misdemeanor, (§ 491.-050, RSMo 1969, V.A.M.S.), questions about acts of misconduct not resulting in conviction have been held improper. See State v. Sanders, supra and Holden v. Berberich, 351 Mo. 995, 174 S.W.2d 791, 149 A.L.R. 929 (question about indictment and charge for driving while intoxicated ruled improper); and Hoffman v. Graber, Mo. App., 153 S.W.2d 817, (question about charge of disturbing the peace held improper). A similar restriction has been applied to juvenile offenses. State v. Tolias, Mo., 326 S.W.2d 329. Courts have only found exceptions to this rule in cases where the interrogation is necessary to show the bias or motive of a prosecution witness; for example, that an indictment or charge has been dropped in return for desired testimony. See 20 A.L.R.2d 1421, 1425.

The restriction, however, does not apply to every specific act of misconduct which might result in a criminal charge, investigation, or indictment. In State v. Foster, Mo., 349 S.W.2d 922, cited by the prosecution during the trial, the Court drew a distinction between asking a witness whether he had been arrested or charged with a crime and asking him if he committed the crime. It held questions of the latter sort proper, subject to the witness' right against self-incrimination.

We turn now to the cross-examination of Mrs. Jones in this case. With respect to the shooting incident referred to in all three questions, the prosecution did not ask the witness whether she had been arrested, investigated, indicted for or charged with a crime. The questions put to Mrs. Jones

did not even imply such an event. The only reasonable inference was that Mrs. Jones was the victim of a crime, not a suspect in its commission. The questions went only to the issue of truthfulness in reporting the crime, and so, as directed to the shooting, do not fall within the ambit of the restriction explained above.

With regard to lying to the police, a violation of city ordinance, the State v. Foster, supra, rule applies. Again, the witness was not asked if she was arrested, investigated, or charged with such a violation. She was merely asked whether she in fact did lie or make a false report to the police. There is no error.

Defendant's last assertion is that the prosecution did not ask its questions of Mrs. Jones in good faith. There is nothing in the record to so indicate. The prosecutor offered to prove the import of his questions while before the bench with opposing counsel. He did not repeat his questions unnecessarily. And the questions were in themselves proper.

 We hold that specific acts of either misconduct or immorality, which may or may not have been the basis of a conviction, may be shown if the specific misconduct discredits the veracity of the witness. See also Sandy Ford Ranch, Inc. v. Dill, Mo., 449 S.W.2d 1, 6, where our Missouri Supreme Court said:

". . . It has long been the rule in Missouri that on cross-examination a witness may be asked any questions which tend to test his accuracy, veracity or credibility or to shake his credit by injuring his character. He may be compelled to answer any such question, however irrelevant it may be to the facts in issue, and however disgraceful the answer may be to himself, except where the answer might expose him to a criminal charge. Chism v. Cowan, Mo., 425 S.W.2d 942, 948. The circumstances presented here in cross-examination do not present any patently prejudicial or erroneous matter to the jury."

We have considered all assignments of error that were preserved for review and find them to be without merit. The defendant was present and represented by counsel throughout the trial, including his allocution and sentencing. We have also examined the parts of the record and entries designated by Criminal Rules 28.02 and 28.08, V.A.M.R., and find them to be proper in form and free from error.

The judgment is affirmed.

DOWD, C. J., and WEIER, J., concur.