For the reasons herein stated, the judgment is affirmed.

All concur.

STATE of Missouri, Respondent,

v.

Jimmy Lee WILLIAMS, Appellant.

No. 35920.

Missouri Court of Appeals,
St. Louis District, Division Four.

June 24, 1975.

**396**

Lawrence O. Willbrand, St. Louis, for appellant.

John C. Danforth, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Jefferson City, Brendan Ryan, Circuit Atty., J. Paul Allred, Jr., Asst. Circuit Atty., St. Louis, for respondent.

ALDEN A. STOCKARD, Special Judge.

Appellant, Jimmy Lee Williams, was found guilty, by a jury, of assault with intent to kill with malice. The jury was unable to agree on the punishment and appellant was sentenced by the court to imprisonment for a term of twenty-five years. We affirm.

Appellant does not challenge the sufficiency of the evidence. Therefore, our statement will be in summary form.

From the evidence offered by the State a jury reasonably could find that on February 8, 1973, appellant, Walter O'Neal, and John Griffin, became involved in an argument, the subject of which is not clear from the record. Griffin and O'Neal then met at the intersection of Taylor and Kennerly. Appellant got out of an automobile with a sawed-off shotgun and stated that every time Griffin came home he started a lot of trouble and that he was going to make sure that he "would start no more." He then shot Griffin in the stomach.

Appellant's first point is somewhat difficult to understand, and will require the statement of some additional facts.

Appellant asserts that the court erred in not allowing the defense to proceed with the testimony of the only eyewitness, Walter O'Neal * * * for the reason that the State intended to cross-examine him on the unrelated charge of arson for which he was presently awaiting trial in the city jail.

Walter O'Neal, called as a witness by appellant, testified that he was nineteen years of age and at the time confined in jail. The assistant circuit attorney then advised the court, out of the presence of the jury, that O'Neal was charged with a crime and was represented by an attorney, and that "in the interest of protection [sic] this man's rights, I feel the court should postpone this witness's testimony until our noon recess [and] that his lawyer be contacted and advised of what is happening here. He may not even want this man to testify * * * This man might perjure himself." The court then ruled that appellant's counsel was to contact O'Neal's lawyer, and it further stated that "the lawyer should be present when he's testifying in any court where I don't know what he's going to say

and nobody else knows what he is going to say * * * I don't know if he is being held as a result of anything coming out of this case." The transcript otherwise reveals that the charge pending against the witness was for arson. The witness was dismissed subject to recall, and appellant's motion for a mistrial was overruled.

The next reference in the transcript to this witness is the statement by defense counsel to the court that "Walter O'Neal * * * has decided upon the advice of his attorney who is representing him in connection with a case that has nothing to do with this case [that he] is not going to testify, as I say, for the reasons that have nothing to do with the incidents in question here but because of the case that is pending against him." A discussion between counsel followed, and the circuit atttorney stated to the court that "His lawyer informed [appellant's counsel] he's not going to testify." Appellant's counsel then said: "But only because he could be questioned * * * on the case that is pending against him, which has nothing to do with this case."

The last and only other reference to this witness occurred at the close of all the testimony. Appellant's counsel repeated to the court that O'Neal's counsel had advised him not to testify "because of the charge that he had pending against him," and he added that "we then had an understanding that I could advise the jury of that." The transcript does not indicate that the jury was so advised.

■ From appellant's argument in his brief it appears that he contends that if O'Neal took the stand and testified the circuit attorney intended to cross-examine him concerning the charge of arson pending against him. We need not discuss or attempt to outline the area of permissible cross-examination in the circumstances presented here. Appellant had the right to call O'Neal as his witness, and there is absolutely nothing in the record to indicate that if he was called and testified the trial

court would not have required the cross-examination to have been kept within authorized and permissible limits. We are not to assume that the court would not have ruled correctly on any objection made to a question asked on cross-examination. Certainly, there is nothing to support the assertion made in appellant's brief that "The court erred in lending its aid in allowing the prosecuting attorney to prevent the witness from testifying, irrespective of what the witness would have adduced." Also, we mention that it was not the choice of the witness or his counsel whether or not he would take the stand as a witness. Appellant had the right to call O'Neal as a witness subject to the rules applicable to all such witnesses, and there is nothing to indicate that the appellant was in any way denied that right. There is no merit in this point.

Appellant next asserts prejudicial error resulted when the trial court refused to declare a mistrial when the circuit attorney asked appellant on cross-examination if "you took a pistol and killed on the 30th day of July, 1973, * * * one Tracy Armstrong." Appellant answered: "No, it's not." Appellant's counsel then objected and requested "the jury to be instructed to disregard that and I ask for a mistrial." The trial court sustained the objection, instructed the jury as requested, but denied the request for a mistrial.

Appellant argues that this question of the circuit attorney is to be equated to the situation where a witness is asked about a previous arrest, and to demonstrate error he cites *State v. Rumfelt*, 258 S.W.2d 619 (Mo.1953) in which it was ruled that "questions asked appellant [in that case] about his previous arrests [were] prejudicial error."

■ Appellant voluntarily took the witness stand and testified in his behalf. Therefore, his credibility was subject to attack in the same manner and to the same extent as any other witness. *State v.*

398

Byrth, 395 S.W.2d 133, 135 (Mo.1965); *State v. Massa,* 512 S.W.2d 912 (Mo.App.1974). When the trial court sustained the objection to the question, as above set forth, counsel for the State said: "It's my understanding you will not permit me to proceed based on the Williams case?" The Court answered "Yes." This calls for a review of the cases upon which the State's counsel apparently was relying. There is a vast difference when counsel for the State intentionally violates the rules of evidence for the purpose of injecting a prejudicial feature with the purpose of relying on the Court's instruction to disregard, and when the State's counsel, correctly or incorrectly, asks a question when he justifiably relies on what he believes to be the accepted rule. The former case should not be tolerated by the appellate courts, and reprimands of counsel would be appropriate, but in the latter the appellate courts should view the matter from the practical effect upon a jury composed of persons of average intellect and reasonable comprehension, together with the long and properly accepted concept that the trial court is in a much better position than an appellate court to determine the existence of prejudice and its removal by reason of appropriate instructions.

We are of the opinion that the "Williams Case," referred to by counsel for the State is *State v. Williams,* 492 S.W.2d 1 (Mo.App. 1973). It was there said: "While an adverse party is privileged under statute [§ 491.050, RSMo 1969] to ask a witness about the nature of prior criminal convictions, whether felony or misdemeanor, * * * questions about acts of misconduct not resulting in conviction have been held improper." After a discussion of cases applying the rule, the court then said: "The restriction, however, does not apply to every specific act of misconduct which might result in a criminal charge, investigation, or indictment. In *State v. Foster,* Mo., 349 S.W.2d 922, * * * the Court drew a distinction between asking a witness whether he had been arrested or charged with a crime and asking him if he committed the crime. It held questions of the latter sort proper, subject to the witness' right against self-incrimination." In the Foster case, a witness for the defense was asked on cross-examination whether he had admitted that he had planned and attempted to rob a theater. After a discussion the witness answered, "I admitted it after a beating." After first discussing the right of a witness not to answer on the grounds of self-incrimination, the court stated: "While it is error to ask a witness if he has been arrested for or charged with a crime, there is an obvious distinction if he is asked if he committed the crime (*Wendling v. Bowden,* 252 Mo. 647, 697, 161 S.W. 774, 789), and we conclude this distinction extends to asking him if he has admitted committing an offense."

Following the Williams case above referred to, the Missouri Court of Appeals, Kansas City District, handed down *State v. Summers,* 506 S.W.2d 67 (Mo.App.1974). There a State's witness was asked, "Now then, Mr. Bossert, how many burglaries have you participated in?" That court stated: "The obvious distinguishing rationale between asking a witness if he has been arrested for or charged with a crime as opposed to asking a witness if he has participated in or committed a crime is, that as to the former, being arrested or charged with a crime proves nothing as to guilt, but, as to the latter, the witness' answer, if given and in the affirmative (and only the witness can interpose the privilege against self-incrimination), constitutes an admission of guilt of the crime." The court held the question was proper, and added, "It is academic that cross-examination of witnesses directed toward showing that they have committed criminal offenses is perhaps the most common method of attacking their credibility."

*State v. Sanders,* 360 S.W.2d 722 (Mo. 1962), should be mentioned. There an alibi witness was cross-examined concerning her participation in the procuring and cashing of two checks, a collateral matter, and there was then an attempt to impeach her testi-

mony in rebuttal. The court held that the cross-examination constituted "references to an *investigation* of the witness for a possible criminal offense, not even rising to the dignity of a formal charge," and that the "principal vice in the * * * line of questioning arises from the violation of the established rule that a witness' credibility may not be attacked by showing a mere arrest, investigation, or criminal charge which has not resulted in a conviction." The court added that it had noted *State v. Foster, supra,* but it was not considered to be "applicable," because it was there held that "questions and answers concerning an admission or confession of a crime [were] not * * * erroneous," while in the Sanders case "the questions * * * were too vague and confused to be considered as calling for a confession of a crime."

 Turning now to the facts of the case before us. The question was rather ineptly worded, but the effect was to ask appellant if he took a pistol and on July 30, 1973 killed Tracy Armstrong. If appellant had admitted that he had done so, it may not have constituted the admission of a crime. However, appellant's answer was that he did not do so, and the State was bound by that answer because it was a collateral matter not subject to impeachment. The circuit attorney did not ask about an arrest, an investigation, or a charge of any kind. Because of its inept wording we cannot say that the question clearly was proper, but in view of the Williams case, which in turn relied on the Foster case, we cannot say that it was a deliberate and intentional attempt to proceed into a prohibited area of cross-examination.

The trial court sustained the objection to the question and gave the requested instruction. It is true that there are some cases in which a trial court cannot by an instruction to a jury to disregard certain questions extract or neutralize the prejudicial effect. In most cases the transgression went directly to the issue of guilt or inno-

cence, as in *State v. Burchett,* 302 S.W.2d 9 (Mo.1957), or the transgressions were persistent and repeated. See *State v. Spencer,* 307 S.W.2d 440 (Mo.1957); *State v. Tiedt,* 206 S.W.2d 524 (Mo. banc 1947). We do not consider this case to fall within either group. The vice of the question was its inept wording; not its general subject. The only issue is whether under these circumstances the trial court abused its discretion in not granting the requested mistrial, an extremely "drastic remedy" which should be exercised "only in extraordinary circumstances." *State v. Camper,* 391 S.W.2d 926 (Mo.1965). Under the circumstances of this case we cannot say that as a matter of law the trial court abused its discretion.

Appellant's third point is that the trial court erred in failing to declare a mistrial "after the State inquired about an inconsistent statement allegedly made by the defendant to a juvenile officer while in the custody of juvenile authorities."

During cross-examination of appellant he was asked if it was true that he and Walter O'Neal stopped and talked to Mr. Griffin (the victim) "at a distance of about ten feet between you?" He answered: "No, it's not." He was then asked if he had ever told anybody "that was true," and he replied: "No, I haven't." The following then occurred:

"Q. Do you remember being interviewed by Mr. Joseph Letterwood?

"A. No, I don't.

"Q. On—a deputy juvenile officer on February 9, 1973?

"A. No, I don't."

Appellant then objected because the question "apparently is based on an interview by a deputy juvenile officer of a juvenile." The court sustained the objection, but denied a motion for a mistrial. The complete answer to appellant's point is that the circuit attorney was not allowed to, and he did not, show that appellant had made

any statement to a juvenile officer, much less show an inconsistent statement. The circumstances could not possibly have justified a mistrial.

■ Appellant's final contention pertains to a statement made by the circuit attorney as follows: "You've got a great responsibility. You put this man on the street again and he'll have another shotgun. That's right." Upon request of appellant's counsel the court sustained an objection to that argument and instructed the jury to disregard it. It denied a request for a mistrial. Assuming that the remark went beyond permissible grounds in speculating on possible future acts of appellant the issue is whether this single remark, which the trial court instructed the jury to disregard, was "so extremely inflammatory and prejudicial as to deprive the [appellant] of his constitutional right to a fair and impartial trial," *State v. Heinrich,* 492 S.W.2d 109 (Mo.App. 1973), and the error could be cured in no way other than by use of the drastic remedy of granting a mistrial. *State v. Camper,* 391 S.W.2d 926 (Mo.1965). The trial court, in the exercise of its discretion, determined that the error was not so grievous that the prejudicial effect could not be removed by a proper instruction to the jury. The proper function of an appellate court in this situation is to determine whether as a matter of law the trial court abused its discretion, and we cannot so find.

The judgment is affirmed.

SMITH, C. J., and NORWIN D. HOUSER, Special Judge, concur.