**STATE of Missouri, Plaintiff-Respondent,**

v.

**Rondel Alfred DUNN, Defendant-Appellant.**

No. 37977.

Missouri Court of Appeals, St. Louis District, Division One.

Jan. 17, 1978.

Hanks, Taylor & Suddarth, W. Morris Taylor, Clayton, for defendant-appellant.

Jeffrey W. Schaeperkoetter, Asst. Atty. Gen., Jefferson City, Courtney Goodman, Pros. Atty., James R. Hartenbach, Asst. Pros. Atty., Clayton, for plaintiff-respondent.

SMITH, Judge.

Defendant appeals from his conviction by a jury of stealing a motor vehicle and the resultant five year sentence.

Defendant's initial challenge is to the sufficiency of the evidence to support the verdict. On July 11, 1975, defendant and another man, Joseph Fredericks, went to Six Flags Amusement Park in St. Louis County in defendant's van with defendant driving. They initially parked in the employees' section of the parking lot. Fredericks left the van and walked around through the parking lot. He returned to the van and they moved to a new location. Both Fredericks and defendant exited the van and walked through the parking lot toward the main gate. They did not go to the main gate, but instead returned to the van. They sat in the van for a few minutes, then exited the van again. They again walked toward the main gate but only for two aisles. They then returned to the van. As they returned both men stopped next to a 1975 Lincoln Continental, cupped their hands and looked through the windows of the Lincoln into the car. Defendant was on the driver's side, Fredericks was on the passenger's side. After a few seconds both men reentered the van which was about ten feet from the Lincoln. They both remained in the van for several minutes. Fredericks then left the van and went to the passenger's side of the Lincoln. He entered the Lincoln and drove off. Very shortly thereafter defendant started the van and, following some distance behind the Lincoln, started to leave the parking area. Both Fredericks and defendant were arrested as they attempted to leave the area by St. Louis County police stationed at Six Flags to conduct surveillance regarding car thefts. Defendant and Fredericks had been under surveillance by these officers at Six Flags for an hour and a half. The Lincoln belonged to David Waldman who had not given defendant or Fredericks permission to use the vehicle. On the floor of the Lincoln when Fredericks was arrested were a dent puller with a portion of the vehicle's ignition lock still attached to it, another piece of the ignition and a screwdriver.

Defendant testified that he took Fredericks to Six Flags to meet a man on business. Defendant didn't know who the man was or what the business was. Defendant admitted the peregrinations through the parking lot but explained them as having to do with Fredericks' attempts to meet someone. Finally, Fredericks told defendant he planned to steal some tires. Defendant refused to participate, Fredericks tried to persuade him, and finally Fredericks left defendant's van saying he didn't need defendant any more. Defendant testified he did not know Fredericks intended to steal a vehicle, did not see him enter the Lincoln although located ten feet away in broad daylight with a view of the passenger door, and did not know Fredericks had stolen the car until defendant was stopped on his way out of the parking lot.

■ We find the evidence sufficient to support the verdict. Defendant's reliance upon *State v. Eye*, 492 S.W.2d 166 (Mo.App. 1973) is misplaced. The evidence and the reasonable inferences to be drawn therefrom establish more than presence of the defendant at the scene and suspicious conduct. The evidence clearly establishes that Fredericks stole the automobile virtually under the eyes of defendant. The two men came to Six Flags together, did not enter the amusement facility itself, walked throughout the parking lot for an hour and one half, specifically "checked out" the vehicle stolen, and left the parking area almost in tandem. The evidence warranted a finding that they were acting together in a preconceived plan to steal a vehicle and that they did so.

Defendant's remaining point is that the trial court erred in failing to sustain defendant's objection to a question asked of defendant on cross-examination and in failing to declare a mistrial. The question, objection, court ruling, and answer were as follows:

"Q. Mr. Dunn, on February the 17th, 1975, did you steal property from an automobile in St. Louis County.

"Mr. Taylor [defense counsel] I am going to object to that, your honor. That is completely improper. I am going to ask for a mistrial. That is an improper question about some other crime.

"The Court: Overruled.

"Q. (By Mr. McConnell) [Prosecutor] You may answer sir.

"A. No, sir, I did not."

■ The State contends the question was permissible as it tends to show intent, absence of mistake or accident and common scheme or plan, three of the exceptions to the general rule precluding evidence of other crimes. *State v. Reed*, 447 S.W.2d 533 (Mo.1969). We are unable to comprehend how a totally unrelated crime occurring six months earlier than the one for which the defendant was on trial, at some unidentified location in St. Louis County under undescribed circumstances tends to show anything except the bad character of defendant. And it is precisely that showing which the general rule is designed to prohibit. The question was not permissible as an exception to the general rule. *State v. Reed, supra.*

■ The State further contends that the question was permissible to attack defendant's credibility pursuant to *State v. Foster*, 349 S.W.2d 922 (Mo.1961). We are reluctantly constrained to agree. Defendant attempts to distinguish this case from *State v. Foster, supra, State v. Williams*, 492 S.W.2d 1 (Mo.App.1973) and *State v. Summers*, 506 S.W.2d 67 (Mo.App.1974) on the basis that each of those cases involved cross-examination of witnesses, not the defendant. The law is clear, however, that a defendant who testifies in his own behalf may be impeached in the same manner as any other witness. *State v. Williams*, 525 S.W.2d 395 (Mo.App.1975); *State v. Massa*, 512 S.W.2d 912 (Mo.App.1974); Secs. 491.050, 546.260, R.S.Mo.1969.

It appears to us that the more serious vice is the holding of *State v. Foster, supra*, that while arrest, charges or investigations of criminal conduct may not be inquired into, it is permissible to inquire of a witness whether he has committed a crime, even though no conviction has resulted. That holding was based upon *Wendling v. Bowden*, 252 Mo. 647, 161 S.W. 774 (1913). *Wendling*, however, was decided at a time when it was permissible to attack a witness'

credibility by showing his general bad character and it is largely upon this basis that the holding relied upon in *Foster* was made. In 1935 in *State v. Williams*, 337 Mo. 884, 87 S.W.2d 175 (1935), the Supreme Court reversed its prior decisions and prohibited impeachment of a witness through a showing of general bad character. It is questionable, therefore, that the *Wendling* case, *supra*, provides a strong base for the *Foster* decision.

It is difficult to allow an inquiry such as that posed in the present case and yet condemn inquiries into arrests, charges and investigations. Section 491.050 R.S.Mo.1969 permits examination only on prior convictions, and *State v. Massa*, 512 S.W.2d 912 (Mo.App.1974) precludes direct reference to prior arrests. To allow the prior arrest to be established under the guise of searching for an admission effectively destroys the intent of the act—to limit examination to prior convictions. Furthermore, it is apparent that it is not the answer which prejudices the defendant, it is the question that carries the poison. A general question of whether the witness has every committed a crime may have little effect on a jury. Where, however, the question contains detailed information such as date, location, victim, or nature of the crime, the jury must, as reasonable persons, conclude that the question is based upon information known to the questioner. A negative answer can have little or no effect on this basic conclusion, and a jury is inevitably left with a belief that the witness has committed the inquired of crime, and is a person of bad character. This is true whether the question has support in fact or not.

We would if the matter were one of first impression hold the question improper and reverse the case and remand for new trial. We are bound, however, by *State v. Foster, supra*, and its progeny, and must, pursuant to that authority, affirm. We transfer the matter, however, to the Supreme Court for reexamination of the law.

Cause transferred to the Supreme Court for reexamination of the law.

CLEMENS, P. J., and McMILLIAN, J., concur.