STATE of Missouri, Respondent,

v.

Guss MAGGITT, Appellant.

No. 58744.

Supreme Court of Missouri,
En Banc.

Dec. 16, 1974.

John C. Danforth, Atty. Gen., William F. Arnet, Asst. Atty. Gen., Jefferson City, for respondent.

John H. Marshall, Public Defender 22nd Judicial Circuit, St. Louis, for appellant.

HENLEY, Judge.

Guss Maggitt (defendant), charged with first degree murder, was found guilty by a jury of second degree murder and, the jury being unable to agree on his punishment, the court assessed punishment and sentenced him to imprisonment for 40 years. He appealed from that judgment to the court of appeals, St. Louis district. That court reversed and remanded in an opinion which tacitly recognized that its decision failed to follow decisions binding on it.[1] On application of the state we ordered the case transferred to this court, because of the obvious conflict with prior controlling decisions,[2] and consider and decide the case "the same as though on original appeal." Mo.Const. Art. V, § 10, V.A.M.S.

Defendant does not question the sufficiency of the evidence to sustain the conviction; hence, a brief summary thereof will suffice. On the evening of July 11, 1972, between 9 and 10 o'clock, Pearlene Carr and her boyfriend, John Mems, visited his mother, Ida Mae Anderson, in her home at 5091 Page. boulevard in St. Louis. Living with Mrs. Anderson at this address were her boyfriend, Guss Maggitt, the defendant, and her mother, Missie Warlick. During the visit, Pearlene, John Mems, his mother and Guss Maggitt had several drinks of Scotch whisky while sitting around a table in the kitchen. In the course of the evening an argument developed between John and Guss regarding Guss's relationship with John's mother. When the argument became heated, Mrs. Anderson asked her son and Pearlene .to leave. As they were leaving the house, Guss ran upstairs and got his .22 caliber revolver and by the time he had returned to the bottom of the stairs John and Pearlene were pulling away from the curb in their automobile. Guss called out to John to "wait" and, as he walked out across the porch and down the steps he said, "John, I want to talk to you." John stopped the car, got out, and walked toward Guss who, by then, was standing on the bottom step next to the porch. When John reached the top of steps in the sidewalk, approximately 15–20 feet from the porch, Guss had his pistol in his hand and told John to stop. Instead, John kept walking toward Guss. At this point, Guss fired three shots into John Mems, killing him.

Defendant's defense was self-defense. He testified that he knew John Mems had a gun in his right side pocket earlier that evening while they were sitting around the kitchen table drinking; that later, as John was advancing toward him up the sidewalk, he saw him reach in that pocket and

1. Mo.Const. Art. V, § 2; Partney v. Partney, 442 S.W.2d 117, 119 [1] (Mo.App.1969) and cases referred to therein.

2. Rule 83.03, Missouri Supreme Court Rules, V.A.M.R.

pull the gun part way out; that he saw the handle of the gun as it emerged from John's pocket; that he fired immediately to protect himself, believing and fearing that John would shoot and kill him if he did not shoot first; that he was afraid of John Mems, because Mems had assaulted and threatened to kill him on at least three occasions during the last three years, the first occasion being shortly after Mems had returned from Pennsylvania.

The main point relied on by defendant for reversal is that the court erred in denying his offer to prove, in connection with his self-defense plea, that Mems had been convicted previously of an armed robbery in Pennsylvania and that he (defendant) had knowledge of that incident. He argues that this conviction and his knowledge of it is admissible to show that Mems was a violent person and that he, therefore, had reasonable grounds to believe himself in imminent danger from Mems when he shot him.

■ In State v. Duncan, 467 S.W.2d 866, 867 [1, 2] (Mo.1971) this court said: "It has long been the rule in this State that where the defense is self-defense evidence is competent to prove that the deceased bore the reputation of being of a violent and turbulent disposition or character, but that such must be proved by testimony concerning his general reputation and not by evidence of specific acts of violence having no connection with defendant. See State v. Elkins, 63 Mo. 159; State v. Roberts, 294 Mo. 284, 242 S.W. 669; State v. Naylor, 328 Mo. 335, 40 S.W.2d 1079; State v. Smart, Mo.Sup., 328 S.W.2d 569; State v. Davis, Mo.Sup., 365 S.W.2d 577; and State v. Hicks, Mo.Sup., 438 S.W.2d 215[6]."

Defendant recognizes this rule but says it should be abandoned and, citing State v. Johnson, 270 N.C. 215, 154 S.E.2d 48, 52[2–4] (1967) and 40 Am.Jur.2d Homicide, § 306 p. 575, suggests that in instances such as that presented here Missouri should follow the trend of modern authority which permits the introduction of evidence of specific acts of violence of the deceased of which the defendant had knowledge prior to the homicide. Essentially the same contention was made in State v. Duncan, supra, in which the North Carolina case of State v. Johnson, supra, was relied upon by the appellant.

In *Duncan,* supra, we reconsidered our rule and reasons for it and concluded that it " * * * is sound, practical, and logical and should continue to be followed." 467 S.W.2d at 869. We adhere to that holding. The trial court did not err in denying defendant's offer of proof that the deceased had been convicted of armed robbery in Pennsylvania.

■ Defendant's second point is that the court erred in overruling his objections to the circuit attorney "exhibiting and demonstrating with pistols belonging to an investigator and the defendant during cross examination of * * * defendant since the circuit attorney had not sufficiently proven similarity of circumstances to warrant the demonstration, and such demonstration was irrelevant and immaterial, inflammatory and prejudicial to the defendant." The only assignment of error in defendant's motion for new trial relative to the exhibition of or demonstration with firearms during the cross-examination of defendant is a charge of error in overruling his objection to " * * * demonstrations with the alleged murder weapon." The argument portion of defendant's brief refers us to two instances during his cross-examination when the circuit attorney used this weapon to demonstrate the manner in which defendant held, pointed and fired it.

Defendant admitted during direct examination that he shot and killed Mems, described the scene and circumstances of the shooting, and identified the pistol later employed in these demonstrations as being the weapon used to shoot Mems.

The question of whether this pistol, admittedly used by defendant to shoot the de-

ceased, could be used by the state, and, if so, the scope of its use in cross-examination to demonstrate how and in what manner defendant held, pointed and fired it was a matter largely in the discretion of the trial court, particularly in view of the defense of self-defense. We confine our inquiry to whether there has been an abuse of that discretion and find none. State v. Whipkey, 358 Mo. 563, 215 S.W.2d 492, 496[8] (1949); State v. Allen, 246 S.W. 946, 947[7] (Mo.1922).

■ The court gave an instruction which told the jury that drunkenness or being under the influence of alcohol is no excuse for the commission of crime and may not be considered in arriving at a verdict. Defendant complains that there was no evidence to support the instruction; that he did not in any manner suggest drunkenness as a defense, his only defense being self-defense; hence, the giving of this instruction was error.

In addition to the evidence of drinking with deceased and others during the course of this evening which culminated in a heated argument and a killing there was also evidence that defendant drank four beers enroute home from his employment. From this evidence a jury reasonably might infer that defendant was under the influence of alcohol at the time of the shooting to such extent that his judgment and actions were substantially affected. In these circumstances, although drunkenness was not made an issue by him, it was not error to give an instruction on voluntary intoxication. State v. Zerban, 412 S.W.2d 397, 401, 402[4] (Mo.1967); State v. Garrett, 391 S.W.2d 235, 244[7] (Mo.1965); State v. Deviney, 278 S.W. 726, 729[12] (Mo. 1925).

■ Defendant contends that the court erred in permitting the state to elicit from its witness, Ida Mae Anderson, testimony that she heard defendant say as he was going out the door with his pistol toward the street where Mems was: "He's not going to get away with this." Defendant objected to the question that brought this answer on the ground that it was leading and suggestive, but the answer was given before his objection, so he moved that the answer be stricken. The court sustained the objection and his motion to strike and ordered the answer stricken.

Defendant now contends that the state secured this answer from its own witness, Mrs. Anderson, by way of cross-examination and an attempt to impeach her; hence, he says, manifest injustice has resulted and we should consider this new contention under the plain error rule. Rule 27.20(c). Defendant obviously received all the relief he sought at the time and he should not now be heard to say that the trial court erred. We have considered his request that the plain error rule be invoked and conclude from examination of the record that no error affecting substantial rights occurred in eliciting this testimony.

■ During cross-examination of defendant's witness, Josephine Amelotti, a criminalist in the police department laboratory, the circuit attorney put on a shirt identified as being the shirt worn by deceased when shot by defendant and had the witness point out for the jury holes made by the bullets. Earlier testimony by the coroner was that Mems had been shot three times. There were four bullet holes in the shirt and the witness explained this by demonstrating that the two holes in the collar or neck area were made by one and the same bullet.

Defendant made no objection at the time to the circuit attorney putting on this shirt and thus displaying it. He now says that this display of the shirt was improper, shockingly gruesome and inflammatory because blood-soaked, and therefore prejudicial to his defense. He now asks that we reverse for these reasons under the plain

error rule. In this connection he not only does not attempt to explain how and in what manner this display of the shirt resulted in manifest injustice or a miscarriage of justice, he does not even assert in argument that it did so result. Invocation of the plain error rule in this case is not called for by the record and application of the rule would be improper.

■ Recognizing that the decision whether to grant a mistrial because of improper argument by the state is largely within the discretion of the trial court, defendant contends the court abused its discretion in overruling his motion for a mistrial when the following occurred during closing argument by the state's attorney:

"MR. ALLRED [state's attorney]: Now, he tells you about first offense, this man who has never been in trouble before, this man who has never showed you any aggressive conduct. How many times do we have to remind ourselves that all the crime that is going on—we read about it— is some guy who stands on a—

MR. BAUER [defendant's attorney]: I object, your Honor, to counsel talking about crime now and giving examples of crime. That's highly prejudicial.

THE COURT: Overruled.

MR. ALLRED: Never been in trouble before, but it ties down the whole city of New Orleans.

MR. BAUER: Objection, your Honor, highly prejudicial.

THE COURT: Objection sustained.

MR. BAUER: Referring to New Orleans. Move for mistrial on that.

THE COURT: Objection sustained to what is going on in New Orleans. It's ordered stricken; jury is instructed to disregard it. Motion for mistrial is overruled."

In his brief, defendant identifies the reference to something that " * * * ties down the whole city of New Orleans" as a well-publicized act of violence involving a man, a "sniper," who terrorized a part of the populace of that city by rifle fire from the roof of a tall building a few years ago. We assume this identification is accurate and that the jury so understood it. This reference in argument to an instance of crime elsewhere, although made in the context of reference to the prevalence of crime in the community and the need to combat it, was improper. But this was an isolated incident in the argument which the trial court ordered stricken and immediately instructed the jury to disregard. It is clear that the trial judge believed from his observation of the incident that the prejudicial effect, if any, of the argument had been removed by the action taken. We cannot say from our examination of this record that the trial court's denial of defendant's request for a mistrial was, as a matter of law, an abuse of discretion. State v. Jewell, 473 S.W.2d 734, 741[8, 9] (Mo.1971); State v. Camper, 391 S.W.2d 926, 927[4] (Mo.1965).

The last point briefed by defendant is that the court " * * * abused its discretion in denying the defendant's motions for a mistrial due to improper remarks by the circuit attorney which taken together were clearly prejudicial to Mr. Maggitt." He points to twelve instances in which he says he complained to the court and moved for a mistrial because of what he characterizes as improper remarks and comments made by the circuit attorney to the court, the jury and to counsel for defendant during and after objections made by defense counsel and before and after rulings made thereon by the court. To describe these instances and what occurred would serve no useful purpose because each amounted to no more than petty bickering between counsel, most of which was outside the hearing of the jury, and collectively the parts heard by the jury could not possibly be said to have deprived defendant of a fair trial. On one trip to the bench for defense counsel to

make an objection to improper side remarks by the circuit attorney to defense counsel, remarks obviously meant for the ears of the jury, the court said: "It's a tossup as to who has done this most often during the trial of this case," the circuit attorney or defense counsel. We agree. No one of the instances mentioned, nor all together, would require the court to take the drastic action of declaring a mistrial. There was no abuse of discretion in denying the motions.

The judgment is affirmed.

DONNELLY, C. J., and MORGAN, HOLMAN, BARDGETT and FINCH, JJ., concur.

SEILER, J., dissents in separate dissenting opinion filed.

SEILER, Judge (dissenting).

Knowledge of deceased's general reputation for a violent and dangerous disposition and knowledge of deceased's specific acts of violence are one and the same in their effect upon the mind of the defendant. Evidence that defendant had knowledge of either tends to prove the reasonableness of his belief of imminent danger to his life. This being so, neither the ends of justice nor the practical administration of the law requires a hard and fast rule that we admit evidence of one and not the other, and each case should be determined on its own facts. See 121 A.L.R. 390–396. Here the prior conviction for armed robbery was not remote, it was known to the defendant, it does not create confusion nor diversion of issues, and bears squarely on defendant's claim that he had a reasonable ground to believe himself in imminent danger from an assault by the deceased. For these reasons, I would hold it error in this case for the court to keep from the jury defendant's knowledge of the victim's prior conviction for violence.