Guss MAGGITT, Appellant,

v.

Donald WYRICK, Warden, Missouri State Penitentiary, Appellee.

No. 75–1779.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 10, 1976.

Decided April 7, 1976.
Rehearing and Rehearing En Banc Denied May 20, 1976.

Robert A. Crowe, St. Louis, Mo., for appellant.

William F. Arnet, Asst. Atty. Gen., Jefferson City, Mo., for appellee; John C. Danforth, Atty. Gen., Jefferson City, Mo., on brief.

Before GIBSON, Chief Judge, BRIGHT, Circuit Judge, and VAN PELT, Senior District Judge.[*]

GIBSON, Chief Judge.

Petitioner, Guss Maggitt, appeals from the District Court's[1] denial of his 28 U.S.C. § 2254 petition for a writ of habeas corpus. Maggitt contends that various trial errors unconstitutionally deprived him of a fair trial and that he should be granted relief from his state second degree murder conviction.

The facts of this case are not particularly significant since the primary dispute evolves around legal issues. However, certain relevant evidence will be noted for the purpose of presenting a factual overview of the matter.

On the evening of July 11, 1972, John Mems and Pearlene Carr visited Mems' mother, Ida Anderson, at her residence in St. Louis, Missouri. Maggitt was also residing at these premises and joined Mems, Ms. Carr and Mrs. Anderson in conversation and the imbibition of undetermined quantities of Scotch whiskey. As the evening progressed an argument developed between Mems and Maggitt in regard to Maggitt's relationship with Mrs. Anderson. The argument soon reached a volatile point and Mrs. Anderson, to avoid further difficulty, suggested that Mems and Ms. Carr leave the premises; Mems and Ms. Carr complied. Maggitt immediately went upstairs, secured his .22 caliber revolver and ran outside. Mems was driving away in his automobile when Maggitt told him to "wait". Mems stopped his automobile, stepped out and approached Maggitt. Maggitt ordered Mems to stop but Mems continued to walk in Maggitt's direction. Maggitt then fired three shots at Mems, one of which struck Mems in the upper back area. Mems died from the gunshot wounds.

Maggitt does not deny that he shot Mems. Rather, he asserts that he was acting in self-defense because he feared for his life and reasonably believed that Mems was reaching for a firearm as he was approaching Maggitt. No firearm was found on Mems' person or in the area proximate to where Mems' body was found. Maggitt unavailingly presented his self-defense theory to the jury in the circuit court of St. Louis, Missouri. He was convicted of second degree murder and was sentenced to 40 years imprisonment. On direct appeal of that conviction to a Missouri court of appeals Maggitt sought reversal primarily on two grounds: (1) the trial court unduly hampered Maggitt's self-defense claim by not allowing the introduction of evidence bearing upon Maggitt's knowledge that Mems had been convicted of armed robbery three years prior to his death, and (2) the trial court erred in not declaring a mistrial on the basis of the prosecutor's improper closing argument to the jury in which Maggitt's previously unblemished criminal record was impliedly compared with the record of a sniper who had terrorized citizens in New Orleans immediately prior to Maggitt's trial.

A Missouri court of appeals ruled in favor of Maggitt on both issues and reversed the conviction.[2] At the request of the State of Missouri, the case was transferred to the Supreme Court of Missouri[3] which re-

---

[*] The Honorable Robert Van Pelt, United States Senior District Judge for the District of Nebraska, sitting by designation.

1. The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri.

2. This unreported opinion is styled *State v. Maggitt*, No. 35345 (Mo.App.1974).

3. The Missouri Constitution permits the transfer of cases from the court of appeals to the supreme court under certain prescribed conditions. Mo.Const. art. 5, § 10. The specified ground for transfer in this case was that the court of appeal's opinion was contrary to prevailing Missouri appellate court decisions.

viewed the case in an en banc hearing. The Supreme Court reviewed the issues and concluded that none of the asserted errors mandated a reversal of the conviction. *State v. Maggitt*, 517 S.W.2d 105 (Mo.1974) (Seiler, J., dissenting). The court adhered to its traditional rule that, in self-defense cases, evidence of the decedent's general reputation for violence is admissible but specific acts of violence which are not connected to the defendant are not admissible. *State v. Duncan*, 467 S.W.2d 866 (Mo.1971). The court also held that the trial judge did not abuse his discretion in not declaring a mistrial on the basis of the prosecutor's closing argument. 517 S.W.2d at 109.

█ Maggitt thereafter filed his present § 2254 petition claiming that the trial judge's rulings on these two issues deprived Maggitt of a fair trial and denied him due process of law.[4] The District Court concluded that there had been no deprivation of Maggitt's constitutional rights and, accordingly, denied the request for habeas corpus relief.

Maggitt contends on this appeal that the trial judge's refusal to admit evidence of Mems' prior armed robbery conviction substantially impaired his claim of self-defense. It is urged that, if the jury had been informed of Maggitt's awareness of this conviction, the jury would have better comprehended the reasonableness of Maggitt's fear of Mems and would have had a secure basis to absolve Maggitt on this ground.

█ States have traditionally been afforded substantial latitude in fashioning their own rules of evidence and criminal procedure. *Manning v. Rose*, 507 F.2d 889, 892 (6th Cir. 1974); *see Chambers v. Missis-*

*sippi*, 410 U.S. 284, 302–03, 93 S.Ct. 1038, 1049–50, 35 L.Ed.2d 297, 312–15 (1973). Therefore, questions relating to the admissibility of evidence are matters of state law and generally do not give rise to constitutional errors which are subject to redress in federal habeas corpus cases.

> [O]rdinarily habeas corpus being a collateral attack is not considered to be a proper remedy for correcting errors in trial procedure. * * * It is only where the trial errors or irregularities infringe upon a specific constitutional protection or are so prejudicial as to amount to a denial of due process that a justiciable federal issue is presented in a habeas corpus proceeding. (Citations omitted.)

*Atwell v. Arkansas*, 426 F.2d 912, 915 (8th Cir. 1970); *accord, Schleicher v. Wyrick*, 529 F.2d 906 (8th Cir. 1976); *Taylor v. Minnesota*, 466 F.2d 1119, 1121 (8th Cir. 1972), *cert. denied*, 410 U.S. 956, 93 S.Ct. 1425, 35 L.Ed.2d 689 (1973).

In order to establish a denial of due process the petitioner must prove that the asserted error was so "gross", *Taylor v. Minnesota, supra* at 1121, "conspicuously prejudicial", *United States ex rel. Cannon v. Maroney*, 373 F.2d 908, 910 (3d Cir. 1967), or otherwise of such magnitude that it fatally infected the trial and failed to afford petitioner the fundamental fairness which is the essence of due process. *Lisenba v. California*, 314 U.S. 219, 236, 62 S.Ct. 280, 289, 86 L.Ed. 166, 179 (1941). In making this determination courts must review the totality of the facts in the case pending before them and analyze the fairness of the particular trial under consideration. *United States ex rel. Bibbs v. Twomey*, 506 F.2d

---

*State v. Maggitt*, 517 S.W.2d 105, 106 (Mo. 1974); Mo.Sup.Ct.R. 83.03. When a case is transferred to the supreme court, the scope of review is "the same as on original appeal." Mo.Const. art. 5, § 10.

**4.** Although Maggitt has not sought state post-conviction relief pursuant to Mo.Sup.Ct.R. 27.-26, this course of action was not required in the present case. We have held that, when the contentions raised in petitioner's § 2254 petition have been considered on the merits by the Supreme Court of Missouri, the petitioner need

not exhaust his rule 27.26 procedures as a prerequisite to obtaining federal habeas corpus relief, *Edwards v. Swenson*, 429 F.2d 1291 (8th Cir. 1970), since under rule 27.26, where the merits of a defendant's contentions have been determined on direct appeal, they will not be again considered in a Missouri post-conviction proceeding. As noted, the Supreme Court of Missouri has considered and rejected allegations identical to those raised by Maggitt in his § 2254 petition.

1220, 1223 (7th Cir. 1974); *Miller v. Crouse*, 346 F.2d 301, 306 (10th Cir. 1965).

 Without considering the advisability or the wisdom of the evidentiary ruling attacked by Maggitt,[5] *Parker v. Swenson*, 332 F.Supp. 1225, 1229 (E.D.Mo.1971), aff'd, 459 F.2d 164 (8th Cir. 1972), *cert. denied*, 409 U.S. 1126, 93 S.Ct. 943, 35 L.Ed.2d 258 (1973); *accord, Cunha v. Brewer*, 511 F.2d 894, 898 (8th Cir. 1975), our review of the present case convinces us that Maggitt was not denied a fair trial. Maggitt was entitled to present evidence that Mems bore a general reputation of having a violent and turbulent temperament. *State v. Duncan*, 467 S.W.2d 866, 867 (Mo.1971). Maggitt adduced testimony to the effect that Mems had physically attacked him on three prior occasions. During these previous encounters Mems had assaulted Maggitt with his fists and threatened him with a knife. The jury was also informed that Mems had held Maggitt at gunpoint in a previous incident. Furthermore, Maggitt testified that Mems had threatened him a few days prior to the shooting by stating: "[T]his is the third time Ida [Anderson] made a mistake with you. * * * [T]he next time there's not going to be no more mistake with you."

The jury was, therefore, presented with evidence from which it could have inferred that Maggitt had a reasonable basis for entertaining a justified fear that Mems would inflict great bodily injury upon him. The jury was apparently unconvinced by this evidence. In light of the jury's unacceptance of this evidence relating to Mems' assaults and threats against Maggitt personally, we fail to see how the exclusion of a singular, somewhat remote, armed robbery conviction unconstitutionally destroyed the viability of his self-defense claim and rendered the trial unfair. Considering Maggitt's actions leading up to the shooting, coupled with other facts in this case, Maggitt's claim of self-defense appears rather attenuated; the refusal to admit one additional thread of evidence did not deprive Maggitt of due process of law.

 Maggitt also contends that the state prosecutor made an improper and prejudicial statement in closing argument and that a mistrial should have been declared. The objectionable portion of the closing argument is as follows:

MR. ALLRED [state's attorney]: Now, [Maggitt] tells you about [his] first offense, this man who has never been in trouble before, this man who has never showed you any aggressive conduct. How many times do we have to remind ourselves that all the crime that is going

---

5. The evidentiary rule enunciated in *State v. Maggitt*, 517 S.W.2d 105 (Mo.1974), does not comport with the emerging trend of judicial decisions discussing the precise issue presented in that case. Many courts, in self-defense cases, permit the introduction of evidence relating to the defendant's knowledge of specific acts of violence directed by the decedent against persons other than the defendant; the purpose is to permit the jury to develop a greater appreciation for the reasonableness of defendant's fear. *United States v. Burks*, 152 U.S.App.D.C. 284, 470 F.2d 432, 434–35 (1972); *State v. Young*, 109 Ariz. 221, 508 P.2d 51 (1973); *People v. Flores*, 539 P.2d 1236 (Colo. 1975); *Williams v. State*, 252 So.2d 243 (Fla. App.1971); *State v. Johnson*, 270 N.C. 215, 154 S.E.2d 48 (1967); *Wood v. State*, 486 S.W.2d 359 (Tex.Cr.App.1972); *see Barger v. State*, 2 Md.App. 565, 235 A.2d 751 (1967). *See generally* Annot., 121 A.L.R. 380, 390–406 (1939). Evidence of decedent's acts of violence against third persons has been admitted in some instances even though the defendant was un-

aware of the acts. *Randolph v. Commonwealth*, 190 Va. 256, 56 S.E.2d 226 (1949).

The justifications advanced in support of the rule adopted in Missouri and other states which excludes certain specific acts of violence in self-defense cases are essentially three-fold: (1) the trial will be unduly extended as the defense attempts to establish and the prosecution undertakes to explain various episodes of violence committed by the victim; (2) extensive inquiry into the existence of, as well as the circumstances surrounding, previous malevolent acts of the victim will tend to obfuscate the true issues at trial and will divert the jurors' attention from the overriding issue of whether the defendant is actually guilty or innocent; and (3) the fact that the victim has acted in a rash and turbulent manner on one or more previous occasions does not establish a perpetual predisposition to violence or aggression. *State v. Duncan, supra*, 467 S.W.2d at 868; Annot., 121 A.L.R. 380, 382–89 (1939). Each state should be accorded the right to its own views on this controversial issue.

on—we read about it—is some guy who stands on a—

MR. BAUER [Maggitt's attorney]: I object, your Honor, to counsel talking about crime now and giving examples of crime. That's highly prejudicial.

THE COURT: Overruled.

MR. ALLRED: Never been in trouble before, but * * * ties down the whole city of New Orleans.

MR. BAUER: Objection, your Honor, highly prejudicial.

THE COURT: Objection sustained.

MR. BAUER: Referring to New Orleans. Move for mistrial on that.

THE COURT: Objection sustained to what is going on in New Orleans. It's ordered stricken; jury is instructed to disregard it. Motion for mistrial is overruled.

Maggitt alleges that the reference to the highly publicized New Orleans sniper incident, which occurred immediately before the trial, and implicitly equating the sniper's record and conduct with Maggitt's, unduly inflamed the jury to the degree that a mistrial should have been declared. Courts have consistently held that prejudicial remarks made by a prosecutor to the jury do not give rise to a denial of due process in habeas corpus cases. *Marlin v. Florida*, 489 F.2d 702 (5th Cir. 1974); *Bergenthal v. Cady*, 466 F.2d 635, 637 (7th Cir. 1972), *cert. denied*, 409 U.S. 1109, 93 S.Ct. 913, 34 L.Ed.2d 690 (1973); *United States ex rel. Colon v. Follette*, 366 F.2d 775 (2d Cir. 1966); *Jackson v. California*, 336 F.2d 521, 524–25 (9th Cir. 1964). These decisions control under the facts of this case. The trial judge, who was in a better position to assess the impact of the statement on the jury, reasonably believed that the comment was not so laden with prejudice as to mandate a mistrial. Furthermore, the jury was instructed not to give any credence to the statement. We conclude that the prosecutor's unfortunate reference did not effect a denial of Maggitt's due process rights.

The judgment of the District Court is affirmed.