**STATE of Missouri, Respondent,**

v.

**Edward Leon WILLETT, Appellant.**

**No. KCD 27760.**

Missouri Court of Appeals, Kansas City District.

Aug. 2, 1976.

---

James R. Wyrsch, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P. J., and WELBORN and HIGGINS, Special Judges.

TURNAGE, Presiding Judge.

Edward Leon Willett was charged with two counts of first degree murder. A jury found him guilty of manslaughter on each count and sentenced him to two years imprisonment on each count. The court ordered the sentences to run consecutively.

On this appeal Willett urges reversal on (1) the unconstitutionality of the provision allowing women to be excused from jury service; (2) in refusing to allow evidence to be admitted concerning the criminal record of the two decedents, Willett's supposed knowledge of their violent reputations and in refusing to give Willett's self-defense instruction; (3) in allowing a detective to testify as to the identity of the two decedents based upon papers found upon them, and in limiting Willett's cross-examination of witnesses who testified as to the identity of the two decedents; (4) in denying Willett a bifurcated trial on the issue of guilt, and once that was established, on the issue of his mental condition; (5) in failing to sustain Willett's motion for acquittal because the State failed to disprove the defense of justifiable homicide; and (6) in ordering the sentences to run consecutively instead of concurrently. Affirmed as to conviction, but remanded for resentencing.

Willett was charged as a result of the killing of Parker and Courtney. The evidence adduced by the State showed that in

the early morning hours the police responded to a call at the home of Willett in Kansas City. The first police officer to arrive stated that as he walked on the front porch of the Willett home, Willett pointed to a shotgun leaning against the house and said "I did it and they are in there". The officer then asked what he had done and Willett replied, "I shot them and they are in there".

On entering the house, the officer found Courtney sitting on a couch in the front room with his legs crossed, and his head lying on his shoulder. There was a large wound in the neck. Parker was lying on the floor with a wound in the left side of the chest. The officer could find no signs of life in either man.

Willett produced, as witnesses, two of the six or seven people who were in the room in addition to the two decedents, and testified on his own behalf. From the testimony of these witnesses, it appears Willett and three or four of his friends were visiting various bars in Kansas City. In one of these they encountered Courtney and Parker. Later in the evening Courtney informed Willett he was going home with Willett, and Courtney and Parker then got in Willett's pickup truck and were driven by Willett to his home.

On arriving, the three men entered the home and found the friends with whom Willett had been drinking earlier in the evening. Within about fifteen or twenty minutes an argument broke out between Courtney and one of the other men present. This led to some blows being struck by Parker, but when Willett entered the room, he immediately broke up the fight without any difficulty and both men obeyed Willett's command to be seated. After this, the man struck by Parker obtained a chain saw and began trying to start it as he advanced toward Parker. Willett broke this up as he had the previous affray, and likewise without difficulty.

At this juncture, Courtney and Parker began assuring each other that each had brought his gun and made statements to the effect they could take care of the entire crowd. At this point, Willett left and obtained a shotgun. According to Willett, as he entered the room, with the gun pointed toward the ceiling, Parker immediately got out of his chair and started advancing toward Willett. Willett said at the same time as he started advancing, Parker started to move his hands toward his belt. Willett immediately lowered the shotgun and fired one blast which struck Parker in the left chest.

Willett stated after he shot Parker, he saw Courtney move his hands and immediately swung the gun toward Courtney and fired, striking him in the neck. Courtney never rose from the couch and, as stated, still had his legs crossed when seen by the police officer.

One of the other witnesses confirmed Willett's version, but one stated Parker never rose from his chair before he was shot.

The officer conducted a search of the bodies and did not find any weapon either on the bodies or anywhere else in the house. Willett stated he did not see any gun on either Courtney or Parker. He stated Parker was wearing a tight fitting tee shirt and trousers when Willett had observed him throughout the evening. Willett also admitted when Parker reached toward his belt, he did not see any sign of a weapon and did not see anything in Parker's hands. He stated the same concerning Courtney. Willett based his action in shooting both men on the fear that they did have a gun.

Willett first questions the automatic excuse which is granted to women in Missouri from jury service as provided in Article I, Section 22(b), Constitution of 1945, and Section 494.031, RSMo 1969. Willett bases his argument upon the holding of the United States Supreme Court in *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975) in which a statute somewhat similar to Missouri in Louisiana was struck down.

■ It is not necessary to decide the validity of the Missouri Constitution and statutes in this case because Willett was tried

in November, 1974. *Taylor* was decided in January, 1975. In *Daniel v. Louisiana*, 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975) the Supreme Court held *Taylor* would not be applied retroactively. Therefore, the status of the Missouri Constitution and statutes concerning women being excused from jury service in effect in November, 1974, controls.

At that time the controlling law in Missouri was *State v. Wright*, 476 S.W.2d 581 (Mo.1972). In that case the Missouri method of excusing women, which Willett attacks in this case, was upheld. For that reason, the attack here made cannot be considered.

Willett next contends he should have been allowed to show that Courtney and Parker had criminal records and, in fact, were residents of a halfway house under federal probation at the time of their death. He further contends he should have been allowed to introduce testimony on the part of three witnesses concerning their knowledge of the reputation of Courtney and Parker for violence. He further contends he should have been allowed to testify as to a remark made by a bar maid to Parker and Courtney that if they caused trouble she would bar them for good.

■ Willett concedes the law in this State is against him as to the fact a violent reputation must be established by the reputation the decedents bore in the community and not by evidence of specific acts of violence having no connection with the defendant. This was reaffirmed in *State v. Maggitt*, 517 S.W.2d 105 (Mo. banc 1974). The evidence which Willett sought to show related to the criminal records of Courtney and Parker as shown by their records at the halfway house where they were last staying. Willett conceded he did not know either Courtney or Parker prior to the evening in question, nor did he have any idea as to their reputation. Under the rule prevailing in Missouri, it would have been improper to permit evidence of the criminal record of Courtney and Parker to be shown. Furthermore, under this rule, the accused must know of the violent reputation. *State*

*v. Blair*, 305 S.W.2d 435 (Mo.1957). The evidence sought to be introduced went only to the criminal record of the deceased, and at best as to some reputation of violence known to others but without showing knowledge of such reputation on the part of Willett.

■ Willett sought to establish his knowledge of the violent reputation of Courtney and Parker through the statement of the bar maid. However, such statement falls far short of being a statement of the general reputation which these two bore in the community. See *State v. Schmidt*, 530 S.W.2d 424 (Mo.App.1975).

Further, the statement of the bar maid does not measure up to the statement in *State v. Parker*, 358 Mo. 262, 214 S.W.2d 25 (1948), where the accused stated he had heard the deceased was "a pretty rough customer". That statement was a clear statement of reputation which that person bore. The statement of the bar maid was at best highly ambiguous, but certainly carried no indication as to the reputation which Courtney and Parker bore.

■ Willett also argues that a showing of the criminal record of Courtney and Parker was admissible to show who were the aggressors in the incident. Suffice it to say the rule stated in *Maggitt* fully answers this argument.

■ The court gave MAI–CR 2.40 without the additional paragraphs under No. 4. Willett also requested an instruction in which all of the bracketed paragraphs under No. 4 in MAI–CR 2.40 was inserted. These paragraphs relate to threats made, and either communicated or not communicated to Willett, the reputation of Courtney and Parker for a rash, violent and turbulent disposition and character, and the fact that Courtney and Parker may have directed any specific acts of violence against Willett prior to the killing. As shown by the previous discussion, there was no evidence before the jury concerning the reputation which Courtney and Parker bore in the community and the giving of this instruction would have been in plain violation of the well

settled rule that instructions must be supported by evidence.

Willett next contends the court erred in permitting Detective Luther to testify as to the identity of Courtney and Parker from papers found on their bodies, but which papers were not available at trial. He further contends the court erred in limiting the cross-examination of Parker's mother and of Detective Luther.

■ Detective Luther stated he had found papers on both bodies giving the identity of each person. He further stated he had known Courtney for a number of years and identified him by sight. Willett makes some contention the testimony of Luther without the production of the papers he found on the bodies violated the "best evidence" rule. It is evident this rule of evidence was not violated since the contents of the writing or papers was not the issue in the case and the identity of Courtney and Parker was proved by facts independent of the papers. *Aviation Enterprises, Inc. v. Cline*, 395 S.W.2d 306 (Mo.App. 1965).

In addition to the identification of Courtney made by Luther through his acquaintanceship, the mother of Parker testified and identified a picture of his body as being her son.

■ Willett's complaint concerning the restriction of his cross-examination of Luther and Parker's mother went to Willett's attempt to prove by both of these witnesses prior criminal records. As discussed previously, such records were not admissible. The cross-examination of these witnesses was within the discretion permitted the trial court and an examination of the rulings here does not show any abuse of such discretion. *State v. Johnson*, 486 S.W.2d 491 (Mo.1972).

■ Willett further contends the court erred in failing to grant him a bifurcated or separate trial on the issue of his mental condition and diminished responsibility at the time of the incident in the event the jury found him guilty.

Willett did not comply with Section 552.-030, RSMo 1969, because he failed to enter a plea of not guilty by reason of mental disease or defect excluding responsibility nor did he give written notice of his intent to rely on such defense. Rather, prior to the trial, Willett's counsel made clear to the court he had no intention of making any issue of Willett's mental condition at the time of the killing, unless Willett was found guilty. Counsel stated in that event, and only in that event, would he want to make an offer of proof in connection with a defense of not guilty by reason of insanity. Apparently Willett's position is bottomed on a procedure advocated in a Law Review article. However, such procedure has not been adopted in this State, and by his failure to follow the procedure dictated by Section 552.030, Willett has failed to raise any question concerning a mental defect which would exclude responsibility.

Willett also contends the court erred in failing to sustain his motion for acquittal at the close of all the evidence because the State failed to introduce any evidence to disprove Willett's claim of self defense. Willett concedes the State produced enough evidence to make a submissible case on homicide, but contends the State was obligated to come forward with other evidence to disprove the evidence which Willett produced and which he claims showed the killings to be the result of self defense or justifiable homicide.

It was stated in *State v. Rash*, 359 Mo. 215, 221 S.W.2d 124 (1949) [1]: "[o]rdinarily self defense is in the nature of an affirmative defense, and a question for the jury."

■ MAI–CR refers to justifiable homicide as a "special negative defense". MAI–CR, p. 2–31. Under MAI–CR 2.40, the burden of proof is on the State to prove the defendant in a criminal case did not act in lawful self defense. However, this does not mean the State is required to come forward with additional evidence after the defendant produced evidence of self defense or justifiable homicide. The burden cast on the State by this instruction can be met by the evidence produced in the State's case in

chief just the same as the other issues which the State is required to prove can be shown.

Since Willett concedes the State made a submissible case by its case in chief, he has no complaint simply because the State failed to introduce evidence in rebuttal of Willett's evidence.

■ Whether the State's evidence, which is not disputed or contradicted, establishes self defense so as to make a killing justifiable homicide is a question of law. Certainly in this case it cannot be declared as a matter of law the killing was a result of self defense or justifiable homicide. *State v. Rash, supra.* The question here was for the jury based upon all of the evidence.

Willett's final contention concerns the making of the two year sentences to run consecutively. While the jury was deliberating, it sent a note to the court asking if Willett were found guilty would the penalty set on each count run concurrently or consecutively. The parties stipulated the court could answer with the word "consecutively". Thereafter, the jury returned a verdict finding Willett guilty on each count and fixing punishment on each count at two years. Nothing was stated in the verdict as to whether the sentences run concurrently or consecutively. However, in pronouncing sentence, the court specified the sentences were to run consecutively.

■ This case was tried prior to the decision in *State v. Baker,* 524 S.W.2d 122 (Mo. banc 1974), in which Section 546.480, RSMo 1969, was declared unconstitutional. The State agrees in this case the court was probably acting under the compulsion of Section 546.480 when it ordered the punishment on each count to run consecutively. Willett requests, and the State agrees, that this cause be remanded for the limited purpose of resentencing.

The judgment of conviction on each count is affirmed, but the sentences pronounced thereon are hereby set aside. This cause is remanded for the limited purpose of resentencing by the court in an exercise of dis-cretion whether to impose the sentences consecutively or concurrently. *State v. Brown,* 525 S.W.2d 565 (Mo.App.1975).

All concur.